178 N.J. Super. 371 (1981)
429 A.2d 373
JOHN J. MCHALE, JR., PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY CIVIL SERVICE COMMISSION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1981.
Decided March 24, 1981.
*372 Before Judges BISCHOFF, MILMED and FRANCIS.
Mark D. Schorr argued the cause for appellant (Sterns, Herbert & Weinroth, attorneys; Mark D. Schorr on the brief).
Mark Fleming, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel; William Harla, Deputy Attorney General, on the brief).
The opinion of the court was delivered by FRANCIS, J.A.D.
*373 This appeal challenges the denial by the Civil Service Commission of veterans' preference status to appellant.
On May 31, 1973 appellant John J. McHale, Jr. was appointed a reserve commissioned officer in the Army of the United States. A commission was bestowed upon him upon completion of the Senior Reserve Officers' Training Corps (ROTC) Program established pursuant to the authority of 10 U.S.C.A. § 2101 et seq. Two years earlier appellant had enlisted in the United States Army Reserve with assignment to the USAR Control Component ROTC as part of his advanced military training in the Senior Reserve Officers' Training Corps Program, 10 U.S.C.A. § 2104. That enlistment was for six years unless sooner discharged by proper authority. On May 30, 1973, upon completion of the Senior ROTC Program, McHale was honorably discharged from his Reserve Corps obligation and was immediately thereafter, pursuant to the authority of 10 U.S.C.A. § 2106, appointed a commissioned officer in the United States Army Reserve.
During the course of McHale's collegiate education he had received a deferment from induction into the armed forces as a result of this entry into the Senior ROTC Program. His deferment was provided pursuant to the specific authority of 50 U.S.C.A. App. § 456(d)(1), (Senior Division, ROTC). The same statute also provided further authority for McHale's commission upon successful completion of this Senior ROTC program and set forth his active military obligation upon an acceptance of a commission. The statutory provision reads as follows:
Within such numbers as may be prescribed by the Secretary of Defense, any person who (A) has been or may hereafter be selected for enrollment or continuance in the senior division, Reserve Officers' Training Corps, ... (B) agrees, in writing, to accept a commission, if tendered, and to serve subject to order of the Secretary of the military department having jurisdiction over him ... not less than two years on active duty after receipt of a commission; and (C) agrees to remain a member of a regular or reserve component until the eighth anniversary of the receipt of a commission in accordance with his obligation under the first sentence of section 651 of Title 10, or until the sixth *374 anniversary of the receipt of a commission in accordance with his obligation under the second sentence of section 651 of Title 10, shall be deferred from induction under this title [sections 451 to 471a of this Appendix] until after completion or termination of the course of instruction and so long as he continues in a regular or reserve status upon being commissioned, but shall not be exempt from registration.... upon the successful completion by any person of the required course of instruction . .. such person shall be tendered a commission in the appropriate reserve component of the Armed Forces if he is otherwise qualified for such appointment. If, at the time of, or subsequent to, such appointment, the armed force in which such person is commissioned does not require his service on active duty in fulfillment of the obligation undertaken by him in compliance with clause (B) of the first sentence of this paragraph, such person shall be ordered to active duty for training with such armed force in the grade in which he was commissioned for a period of active duty for training of not less than three months or more than six months... Upon being commissioned and assigned to a reserve component, such person shall be required to serve therein, or in a reserve component ... until the eighth anniversary of the receipt of such commission pursuant to the provisions of this section. [Emphasis supplied.]
Upon appellant's commission in the United States Army Reserve it was determined by the Department of the Army, as provided for in the foregoing section, that his service on active duty for two years was not then required in fulfillment of the service obligation undertaken by him in 1971. Accordingly, appellant was ordered, as further provided in the same section, to active duty for training with the United States Army for a period of not less than three months or more than six months. The authority for that activation was specifically noted as 50 U.S.C.A. App. § 456(d)(1). In addition, McHale's military service obligation, as again provided in the same section, was extended to eight years from the date of his commission.
On February 21, 1974 McHale reported for active duty training with the United States Army at Fort Benning, Georgia. On May 26, 1974, 93 days later, McHale completed his active military service and was thereupon separated from active duty and assigned to the reserve component for the remainder of his eight years military service obligation.
On June 10, 1974 McHale was appointed to the position of Sanitarian with the New Jersey Department of Health, a position covered under the State Civil Service jurisdiction. In 1977 *375 he applied for and received veterans' status from the Department of Civil Service and was assigned a veterans' preference number. In 1978 he applied for the Senior Sanitarian examination and in 1979 he applied for the Field Representative Eye Health examination.
Subsequent to his applications the Department notified appellant that his veterans' preference for Senior Sanitarian examination had been awarded erroneously and would be revoked. The Department had reviewed appellant's service record, concluded that Army Reserve training was the reason for his active service, and determined that he was, therefore, ineligible for veterans' preference by reason of N.J.S.A. 11:27-1(12), which defines a "veteran" of the Vietnam conflict to be a soldier or sailor who has served in the active military or naval service of the United States in the:
(12) Vietnam conflict, after December 31, 1960, who shall have served at least 90 days commencing on or before the date of termination as proclaimed by the Governor[[1]] in such active service, exclusive of any period he was assigned (1) for a course of education or training under the Army Specialized Training Program or the Navy College Training Program which course was a continuation of his civilian course and was pursued to completion, or (2) as a cadet or midshipman at one of the service academies, any part of which 90 days was served between said dates; and exclusive of any service performed pursuant to the provisions of section 511(d) of Title 10, United States Code,[[2]] pursuant to an enlistment in the Army National Guard or as a reserve for service in the Army Reserve, Naval Reserve, Air Force Reserve, Marine Corps Reserve, or Coast Guard Reserve; provided, that any person receiving an actual service-incurred injury or disability shall be classed as a veteran whether or not he has completed the 90 days service as herein provided.
Appellant appealed the Department's decision to the Civil Service Commission, asserting that he was "not presently, was not at the time of my active duty, and will never be enlisted" under 10 U.S.C.A. § 511(d), which provides that

*376 Under regulations to be prescribed by the Secretary of Defense ... a non-prior-service person who is qualified for induction for active duty in an armed force and who is not under orders to report for induction into an armed force under the Military Selective Service Act of 1967 (50 U.S.C.App. 451-473), except as provided in section 6(c)(2)(A)(ii) and (iii) of such Act, may be enlisted in the Army National Guard or the Air National Guard, or as a Reserve for service in the Army Reserve, Naval Reserve, Air Force Reserve, Marine Corps Reserve, or Coast Guard Reserve, for a term of six years. Each person enlisted under this subsection shall perform an initial period of active duty for training of not less than twelve weeks to commence insofar as practicable within 180 days after the date of that enlistment.[[3]]
The Commission reviewed the matter on the written record (pursuant to N.J.A.C. 4:1-8.15), concluded that N.J.S.A. 11:27-1 et seq. "clearly excludes the type of service to which... [appellant was] a participant" and dismissed his appeal. Appellant did not pursue judicial review of the Commission's decision.
Subsequent to the Commission's action the Department notified appellant that he would not receive veterans' preference on the Field Representative's examination. Appellant appealed the Department's decision to the Commission, asserting that his active service was not pursuant to 10 U.S.C.A. § 511(d). The Commission found that it had previously considered the issue of appellant's eligibility for veterans' preference in the Senior Sanitarian appeal, that it had "previously adjudicated" that issue and that the issue presented in appellant's Field Representative appeal was "exactly the same." The Commission, therefore, dismissed his appeal "in view of the applicability of Collateral Estoppel...."
McHale's contention is that N.J.S.A. 11:27-1(12), by its terms, does not exclude his service category from veterans' status and consequent preference under Civil Service.
*377 Appellant asserts that, in enacting N.J.S.A. 11:27-1(12), the Legislature only intended to exclude active military service performed pursuant to 10 U.S.C.A. § 511(d). He maintains that the phrase, "pursuant to an enlistment in the Army National Guard or as a reserve for service in the Army Reserve, Naval Reserve, Air Force Reserve, Marine Corps Reserve, or Coast Guard Reserve," does not have "an independent life and meaning" but "serves no other purpose" than "to qualify the antecedent phrase" (i.e., "any service performed pursuant to the provisions of sections 511(d) of Title 10, United States Code").
To the contrary, the Commission contends that, in enacting N.J.S.A. 11:27-1(12), the Legislature intended to exclude service performed pursuant to 10 U.S.C.A. § 511(d) and active service performed "pursuant to an enlistment in the Army National Guard or Army Reserve, Naval Reserve...." The Commission maintains that
... [the] phrase "pursuant to the provisions of section 511(d) of Title 10, United States Code" is separated from the subsequent phrases pursuant to an enlistment in the Army National Guard or as a reserve for service in the Army Reserves ..." by a comma. This punctuation mark between the phrases, together with the repetition of the words "pursuant to" at the beginning of the second phrase, is firm textual support for the Commission's construction of the phrases as separate and distinct exclusions with independent meanings.
N.J.S.A. 11:27-1(12) is hardly a model of grammatical construction. Depending on the "emphasis" placed on the comma after "United States Code," this comma can be viewed as separating two distinct phrases with independent meanings (as the Commission asserts) or (in conjunction with the comma before "United States Code") as only serving to offset the phrase "United States Code" and not as serving "in any fashion ... to grammatically create disjunctive phrases" (as appellant asserts). In short, "the structure and punctuation" used in the pertinent portion of N.J.S.A. 11:27-1(12) do not offer "firm textual support" for either construction.
In addition, the Commission argues that to limit the exclusions only to categories falling within the provisions of § 511(d) of Title 10 of the United States Code would render the following language: "pursuant to an enlistment in the Army National *378 Guard or as a reserve for service in the Army Reserves ...," superfluous. The Commission espouses an interpretation that service pursuant to 10 U.S.C.A. § 511(d) is excluded by the "first phrase" and service pursuant to "other methods of entrance into the National Guard or the Reserve forces" is excluded by the "second phrase." McHale argues against such a disjunctive meaning. He contends that if the Legislature intended to exclude all service performed pursuant to reserve duty (which would include service pursuant to 10 U.S.C.A. § 511(d)), the "first phrase" becomes superfluous, a result not intended by the enactors. He argues that the "second phrase" is merely explanatory of the first, rendering neither superfluous.
There are many rules of statutory construction. All of them, however, are essentially tools used by the courts to ascertain the legislative intent in a statutory provision. The goal of the interpretative process is the intent of the Legislature, and all rules of construction are subordinate to the end that a statute will not be construed to lead to absurd results. State v. Provenzano, 34 N.J. 318 (1961).
In New Capitol Bar & Grill Corp. v. Employment Security Div., 25 N.J. 155 (1957), our Supreme Court stated:
... It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." [at 160, quoting from Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378 (1956)]
The legislative intent here may be gleaned by an examination into the "obvious purpose of the Legislature" in grafting the veterans' preference provision onto the Civil Service statutes. The obvious purpose here is quite clear. The Legislature has simply implemented a constitutional provision which permits:
... preference in appointments by reason of active service in any branch of the military or naval forces of the United States in time of war.... [N.J.Const. (1947), Art. VII, § 1, par. 2]
In determining to afford such a preference, the Legislature understandably imposed minimum requirements as to the type and duration of the military service that had to be performed in *379 order to qualify for the preference (N.J.S.A. 11:27-1(12)). Individuals whose military service was pursuant to 10 U.S.C.A. § 511(d) and circumscribed thereby were excluded. Section 511(d) is a provision in our national defense legislation providing for a trained enlisted reserve. The section provides a method by which a substantial proportion of the nation's citizenry is given a relatively short period of active duty training, after which he or she reverts to a civilian enlisted reserve status. The termination of the short training period is more or less predetermined and is intended for training incident to a reserve status rather than to an unlimited active duty status. The national purpose is to keep most of the nation's potential enlisted soldiers and sailors in civilian pursuits, albeit sufficiently trained for early deployment should the occasion arise. In most cases the civilian pursuits of the individuals are not seriously disrupted. Recognizing a similar need for commissioned personnel, provisions which somewhat parallel those relating to an enlisted reserve, i.e., 10 U.S.C.A. § 511(d), provide for reserve officers' training, 10 U.S.C.A. § 2101 et seq. One program in effect at the time we are concerned with permitted deferment from induction into the armed forces in an enlisted status. That deferment was pursuant to the specific authority of 50 U.S.C.A. App. § 456(d)(1) (Senior Division, ROTC). That same section also provided for the authorization for the awarding of a commission upon successful completion of the program, and in addition thereto set forth the active military service commitments incident to the acceptance of the commission. The obligation undertaken was for two years of active duty, if such a period was deemed necessary by the Department of Defense. If such service was not required, then the ROTC trainee was to be ordered to "active duty for training" for not less than three nor more than six months. Here again, when the two-year active duty period was not required, the national defense purpose was to maintain a trained commissioned reserve while at the same time permitting the reserve officer the opportunity to engage in his usual civilian pursuits with a minimum of interruption.
*380 The parallelism of the provisions pertaining to enlisted and commissioned reserve components seems clear, and there would appear to be no state legislative purpose served by differentiating between "enlisted provisions of Section 511(d) and the commissioned provisions of § 456(d)(1)" so as to prefer the latter over the former in according preferred Civil Service status.
The legislative purpose was to reward those whose military commitments, commissioned or enlisted, were of such a nature and duration as to interfere substantially with an individual's civilian status. With such a purpose in mind we are of the view that the legislative intent was to exclude the category of service performed by McHale and that the language, "pursuant to an enlistment in the Army National Guard or as a reserve for service in the Army Reserves ...," N.J.S.A. 11:27-1(12), is to be expanded so as to include commissioned service of the category herein. New Capitol Bar & Grill Corp. v. Employment Security Div., supra.
Our holding in this regard makes it unnecessary to consider the other points raised in the briefs. We accordingly affirm the dismissal directed by the Civil Service Commission.
Affirmed.
NOTES
[1] Governor Brendan Byrne proclaimed that August 1, 1974 was the official date of termination for the Vietnam conflict in Executive Order No. 7 (1974).
[2] 77 Stat. 135; 10 U.S.C.A. § 511(d).
[3] In 1967, when N.J.S.A. 11:27-1(12) was first enacted (L. 1967, c. 312, § 1), the "active duty for training" required to be performed pursuant to 10 U.S.C.A. § 511(d) was "not less than four months." In 1975, 10 U.S.C.A. § 511(d) was amended to reduce the active duty for training requirement to "not less than twelve weeks." Pub.L. 94-106.