227 N.J. Super. 270 (1988)
546 A.2d 1094
ALFRED FASCHING AND MARGUERITE FASCHING, HIS WIFE, AND VALERIE COLLINS, PLAINTIFFS-APPELLANTS,
v.
JOSEPH KALLINGER AND PAUL GIBLIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1988.
Decided August 11, 1988.
*271 Before Judges KING, GAULKIN and D'ANNUNZIO.
Nancy E. Lucianna argued the cause for appellants (Lucianna, Bierman and Stillman, attorneys; Frank P. Lucianna, of counsel, Nancy E. Lucianna, on the brief).
Nicholas E. Nasuta argued the cause for respondent Joseph Kallinger.
*272 Brian T. Giblin argued the cause for respondent Paul Giblin (Giblin & Giblin, attorneys; Brian T. Giblin, on the letter brief).
Cindy R. Merker argued the cause for Violent Crimes Compensation Board (Cindy R. Merker filed a letter expressing the position of the Board).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
This is a continuation of litigation which we considered in part in Fasching v. Kallinger, 211 N.J. Super. 26 (App.Div. 1986). Plaintiffs appeal an adverse summary judgment entered by Judge Hamer.
On January 8, 1975 Joseph Kallinger killed Maria Fasching. Plaintiffs Alfred and Marguerite Fasching are Maria's parents, and plaintiff Valerie Collins is Maria's sister.
On August 19, 1975 Kallinger entered into a contract with Flora Schreiber in which she acquired the book, magazine and movie rights to Kallinger's life story. Kallinger was to receive 12.5% of all future net earnings from any book or movie.
Kallinger retained defendant Giblin to represent him in defending charges arising out of Fasching's death. By contract dated July 6, 1976 Kallinger assigned his rights under the Schreiber contract to Giblin. On October 12, 1976 Kallinger was convicted of murdering Maria. He was sentenced to life imprisonment. The facts are treated in more detail in our previous opinion, supra, and in a companion case, Romaine v. Kallinger, 109 N.J. 282 (1988).
The issue is whether funds received by Giblin[1] as royalties under the assignment of the Kallinger-Schreiber contract must be paid to the Violent Crimes Compensation Board pursuant to *273 New Jersey's so-called Son of Sam law adopted and effective in 1983. L. 1983, c. 33; N.J.S.A. 52:4B-26 et seq. For a discussion of the statute and its legislative history see our previous opinion, supra 211 N.J. Super. at 33-34 and at 41-45.
Judge Hamer ruled that Giblin was entitled to retain the moneys received to date because Kallinger had a constitutional right to counsel and because the royalties paid to Giblin did not exceed the reasonable fees and disbursements to which he was entitled for having defended Kallinger. In so ruling, Judge Hamer reluctantly accepted as the law of the case the prior ruling of Judge Cassidy that the statute applied retroactively to Kallinger's assignment to Giblin. Judge Cassidy's retroactivity ruling was not reviewed in the earlier appeal. 211 N.J. Super. at 35, 44.
Retroactive legislation operates on transactions which have occurred, or rights and obligations which have existed, before passage of the statute. Weinstein v. Investors Savings and Loan Assn., 154 N.J. Super., 164, 167 (App.Div. 1977), certif. den. 75 N.J. 598 (1978). A fundamental tenet of statutory construction is that statutes ought not to apply retroactively "unless such an intention is manifested by the Legislature in clear terms." Skulski v. Nolan, 68 N.J. 179, 202 (1975). Prospective application of a statute is favored. Gibbons v. Gibbons, 86 N.J. 515 (1981). The most frequently stated reason for limiting statutes to prospective application is
... that retroactive application of new laws is usually unfair. There is general consensus that notice or warning of the rule should be given in advance of the actions whose effects are to be judged. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible concerning law that has yet to exist. [2 Sutherland, Statutory Construction (4th ed. Sands, 1986), § 41.02 at 340-341.]
Accord Gibbons v. Gibbons, supra at 522; Kendall v. Snedeker, 219 N.J. Super. 283, 285 (App.Div. 1987); Weinstein v. Investors Savings & Loan Assn., supra, 154 N.J. Super. at 167. In addition, a legislature is ordinarily concerned with establishing rules of future conduct. 2 Sutherland, supra, § 41.01 at 337.
*274 Despite this preference for prospective application a statute may be applied retroactively in three situations. Retroactivity is appropriate when the Legislature has expressly or impliedly manifested its intention that a statute be applied retroactively. Gibbons v. Gibbons, supra, 86 N.J. at 522. "This expression of Legislative intent may be either expressed, that is, stated in the language of the statute or in the pertinent legislative history [citation omitted], or implied, that is, retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation [citations omitted]." Ibid.
A court may apply a statute retroactively if the statute is ameliorative or curative. Id. at 523. The ameliorative exception applies only in criminal law, in cases where the statute is intended to impose a lesser punishment. Kendall v. Snedeker, supra, 219 N.J. Super. at 286. The "curative" exception comes into play when a statute amends a previous law which is unclear or which does not effectuate the actual intent of the Legislature in adopting the original act. Id. at 287. See Miller v. Hall Bldg. Corp., 210 N.J. Super. 248 (Law Div. 1985), in which the court retroactively applied an amendment easing a statutory prohibition on indemnification clauses in construction contracts.
The third situation identified by Gibbons as indicating retroactive application focuses on the expectations of the parties. 86 N.J. at 523.
Finally, in the absence of a clear expression of legislative intent that the statute is to be applied prospectively, such considerations as the expectations of the parties may warrant retroactive application of a statute. Cf. Westinghouse Elec. Corp. v. United Elec. Radio & Machine Workers of America, 139 N.J. Eq. 97, 106 (E. & A. 1946) (retroactive application of amendment to anti-injunction act permissible because "the right to an injunction is a right in future"); 2 Sutherland, Statutory Construction, supra, § 41.05 at 261. [Ibid.]
But, even if one of these circumstances exists, a statute will not be given retroactive application if to do so would result in manifest injustice to a party. Gibbons, supra, 86 N.J. at *275 523. "The essence of this inquiry is whether the affected party relied to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively." Id., 523-524.
Applying these principles to the present case, we conclude that the Legislature did not intend that N.J.S.A. 52:4B-26 et seq. apply to contracts entered into before the effective date of the statute, January 26, 1983. Nothing in the express language of the act suggests that it applies to pre-existing contracts. Nothing in the legislative history, consisting of the sponsor statement, two statements of the Senate Law, Public Safety and Defense Commmittee (March 8 and October 7, 1982) and the Governor's press release of January 26, 1983, suggests that the statute was intended to apply to pre-existing contracts.
Moreover, the structure of the statute is such that retroactive application would make it unworkable. It provides that a contract to which the statute applies is void unless "it provides for payment of the moneys in escrow to the Violent Crimes Compensation Board in accordance with the procedures set forth in this act." N.J.S.A. 52:4B-26. Since pre-existing contracts would not contain such a provision, retroactive application would void all agreements which pre-dated the statute.
The other Gibbons exceptions clearly do not apply. The statute is neither ameliorative, as that term is interpreted in Kendall v. Snedeker, supra, nor is it curative, inasmuch as it creates an entirely new scheme. Retroactive application would not further the legitimate expectations of the parties, but rather would defeat them. Giblin had no reason to suspect in 1976 that money he received in exchange for representing Kallinger would have to be repaid to the board. In fact, the statute has no mechanism for reaching monies paid prior to its effective date. There is no doubt that at least Giblin relied on prior law in deciding to defend Kallinger in exchange for *276 Kallinger's interest in the Schreiber contract. Applying the statute to Giblin would be manifestly unfair.
Limiting the act to prospective application avoids the risk of conflict with the federal and State constitutional prohibitions against impairment of contracts, U.S. Const., Art. I, § 10; N.J. Const. (1947), Art. IV, § VII, par. 3. See generally So. Hamilton Assoc. v. Mayor & Coun. of Morristown, 99 N.J. 437 (1985). Cf. Woodhouse v. Woodhouse, 17 N.J. 409, 416 (1955) (court's duty is to construe a statute to avoid a conflict with the constitution). See also United States v. McDonald, 607 F. Supp. 1183 (E.D.N.C. 1985) which ruled that retroactive application of a similar federal statute to a crime committed prior to the effective date of the statute would violate the ex post facto clause of the United States Constitution.[2]
Judge Hamer's order dated June 19, 1987 is affirmed.[3]
NOTES
[1] Giblin's fees and disbursements totaled $311,888.53. He has received less than $30,000 under the Kallinger assignment. See 211 N.J. Super. at 31-32.
[2] Whether the New Jersey statute applies to contracts entered into after the act's effective date, but arising out of crimes committed before the effective date is not before us.
[3] The order also dismissed the first count alleging wrongful death and the fourteenth and sixteenth counts alleging defamation. Plaintiffs-appellants' brief on appeal did not address dismissal of these counts.