257 N.J. Super. 84 (1992)
607 A.2d 1354
DOUG BROWN, APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF PERSONNEL AND CITY OF ATLANTIC CITY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 29, 1992.
Decided June 12, 1992.
*85 Before Judges KING, BROCHIN and CARCHMAN.
Goldenberg, Mackler & Sayegh, attorneys for appellant (Keith A. Bonchi, on the brief).
Robert J. Del Tufo, Atty. Gen., attorney for respondent, (Mary C. Jacobson, Deputy Atty. Gen., of counsel; Joann Fitzpatrick, Deputy Atty. Gen., on the brief).
Paul J. Gallagher, attorney for respondent City of Atlantic City joined in respondent State of New Jersey's brief.
The opinion of the court was delivered by CARCHMAN, J.S.C. (temporarily assigned).
Appellant, Douglas Brown (Brown), a veteran of the 1982 Lebanon peacekeeping mission, appeals from a final determination of Commissioner of the Department of Personnel (DOP) denying him a veteran's preference on the competitive list for the position of firefighter. The issue presented on this appeal is whether the recent amendments, L. 1991 c. 390 § 1, ("amendments"), to the veteran's preference statute, N.J.S.A. 11A:5-1(b), formerly N.J.S.A. 11:27-1(b), which includes in the definition of "veteran" persons who participated in the Lebanon Peacekeeping Mission, Grenada Peacekeeping Mission, Panama Peacekeeping Mission and Operation "Desert Shield/Desert Storm," should be applied retroactively. We conclude that the *86 amendment should be applied prospectively and affirm the decision of the Commissioner.

I.
In June, 1988 Brown had submitted documentation demonstrating his service in the United States Navy and his participation in the Lebanon Peacekeeping Mission. At the time of Brown's application, only veterans of World War I, World War II, the Korean conflict and the Vietnam conflict, as well as specified military engagements prior to World War I, were eligible for veteran's preference in accordance with the definition and terms of N.J.S.A. 11A:5-1(b). DOP had notified Brown on June 15, 1988 of his "non-veteran" status.
DOP announced an open-competitive examination for firefighter for Atlantic City with a closing date of February 28, 1991. Brown applied for the examination. The examination was conducted on June 22, 1991, and Brown was advised of the results in January, 1992. He ranked "116 non-veteran." If granted veteran status, Brown's rank would be elevated to tenth and virtually insure his appointment.
On January 16, 1992, Governor Florio signed L. 1991 c. 390 into law. This legislation, effective that same date, amended N.J.S.A. 11A:5-1(b) by adding to the definition of "veteran" those persons who served in the military during the Lebanon Peacekeeping Mission, the Grenada Peacekeeping Mission, the Panama Peacekeeping Mission and Operation "Desert Shield/Desert Storm" Mission. The amendments delineate the time periods of the military operations so that participation in the Lebanon Peacekeeping Mission refers to service on that mission during the period "on or after September 26, 1982."
Subsequent to the effective date of the amendments, Brown wrote to DOP asserting that because of the amendments, he should be recognized as a veteran on the list of qualified applicants. On February 26, 1992, Anthony J. Cimino, Commissioner of DOP, responded to Brown indicating that the benefits *87 extended by the new amendments would not be applied retroactively to the firefighter's list but assured Brown that he would be granted veteran's preference for all future exams.
On April 2, 1992, Brown improperly filed an action in the Law Division challenging DOP's decision. See, Pascucci v. Vagott, 71 N.J. 40, 53, 362 A.2d 566 (1976). The Law Division judge declined to hear the matter and determined that it should be transferred to and heard by this court. R. 2:2-3(a)(2); R. 1:13-4. Brown then correctly filed a notice of appeal from DOP's final determination denying Brown's veteran status. Brown also filed an application for emergent relief, R. 2:9-8, as appointments from the firefighter's list were about to be made. The application to stay appointments was denied but we accelerated the appeal. R. 2:9-2.

II.
The veteran's preference has long antecedents in the constitutional and statutory history of New Jersey. First enacted in 1932 as L. 1932 c. 122 § 3(29a), a supplement to legislation creating the merit system in New Jersey, L. 1908 c. 156, the early statute creating a veteran's preference was elevated to constitutional status by inclusion in the New Jersey Constitution of 1947 of this provision:
... preference in appointments by reason of active service in any branch of the military or naval forces of the United States in time of war may be provided by law. [N.J.Const. of 1947 art VII, § 1 para. 2].
In implementing this constitutional prerogative, the Legislature has from time to time amended N.J.S.A. 11A:5-1(b) to reflect United States involvement in military operations and conflicts, as well as other special circumstances warranting legislative recognition. See, e.g., the 1967 amendment which included as "veterans" persons who served as cadets or midshipmen at one of the service academies during the period of time relating to the Vietnam conflict. L. 1967 c. 312, § 1. In sum, the veteran's preference "rewards those whose military commitments ... were of such a nature and duration as to *88 interfere substantially with an individual's civilian status." McHale v. Civil Serv. Comm'n, 178 N.J. Super. 371, 380, 429 A.2d 373 (App.Div. 1981).
The legislative practice of incorporating a number of military operations in one legislative act is not unique to the present amendments. In fact, the earliest legislative creation of the veteran's preference in 1932 included an expanded list of military engagements in defining the term "veteran." Included in the definition were veterans of the Indian Wars and Uprising, Spanish American War, Philippine Insurrections and Expeditions, Peking Relief Expedition, Cuban Occupations (both 1898 and again in 1906), Mexican Punitive Expedition, Mexican Border Patrol and World War I. This 1932 amendment included United States military involvement from the late 19th Century to 1918. The recent amendments spanning a period of nine years and four military engagements follow the earlier pattern and reflect the legislative decision to extend the veteran's preference to veterans of Lebanon, Grenada, Panama Peacekeeping Missions and Operation Desert Shield/Desert Storm. Against this historical perspective, we examine the issues presented on this appeal.

III.
In determining whether a statute should receive retroactive application, we restate the general rule that statutes relating to substantive rights should be construed prospectively unless the legislature indicates otherwise. Twiss v. State, Dep't of Treasury, 124 N.J. 461, 591 A.2d 913 (1991); Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95, 577 A.2d 1239 (1990); Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981); Carnegie Bank v. Shalleck, 256 N.J. Super. 23, 606 A.2d 389 (App.Div. 1992); Fasching v. Kallinger, 227 N.J. Super. 270, 546 A.2d 1094 (App.Div. 1988). One commentator noted that such prospective application is "presumptive which *89 can only be rebutted by the act itself." 1A Sutherland, Stat. Const. § 22.36 at 300 (Sands 4th ed. Supp. 1992).
Three circumstances compel the retroactive application of statutes:
1) the legislature has expressed its intent, either explicitly or implicitly that the statute be given such application; or
2) the statute is curative; or
3) the reasonable expectations of those affected warrant such application.
See, Fasching v. Kallinger, supra, 227 N.J. Super. at 274, 546 A.2d 1094. In Gibbons v. Gibbons, supra, 86 N.J. at 522, 432 A.2d 80, the Supreme Court spoke to the issue of legislative intent:
This expression of legislative intent may be either expressed, that is, stated in the language of the statute or in the pertinent legislative history ... or implied, that is, retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation. [citations omitted]
In examining legislative intent, the first avenue of inquiry must be directed to the language of the statute itself. Sheeran v. Nationwide Mut. Ins. Co. Inc., 80 N.J. 548, 404 A.2d 625 (1979). The amendments are silent and provide no explicit language supporting retroactive application. While they are also silent as to prospective application, the statutory scheme contained in N.J.S.A. 11A:5-1(b) provides some guidance in determining legislative intent. N.J.S.A. 11A:5-1(b) establishes the three conditions that must be fulfilled to qualify for the veteran's preference:
1) active service during a time period set forth in the statute, and
2) discharge or release under other than dishonorable conditions from that service, and
3) presentation to the Commissioner of sufficient evidence of the record of service on or before the closing date for filing an application for an examination.

Brown asserts that he fulfilled these three conditions including presentation of veteran's credentials in June 1988 well before *90 the closing date of February 28, 1991. (It is not clear from the record whether the June, 1988 submission of veteran's credentials related to the firefighter's exam or were submitted with an earlier application to a different exam.) This argument begs the question. At the time of the submission in June, 1988, plaintiff had no right to a veteran's preference. The Legislature retained the closing date of the test as the cut-off point for the application of the veteran's preference. While not dispositive of the issues before us, the retention of the closing date in the amended legislation is inconsistent with a legislative intent that rights acquired after the closing date are to be applied retroactively.
Brown argues that the amendments should be applied retroactively because they are "curative."
The `curative' exception comes into play when a statute amends a previous law which is unclear or which does not effectuate the actual intent of the legislature in adopting the original act. [Fasching v. Kallinger, supra, 227 N.J. Super. at 274, 546 A.2d 1094].
In Kendall v. Snedeker, 219 N.J. Super. 283, 530 A.2d 334 (App.Div. 1987), we noted:
In essence, an amendment which falls within the curative exception can be retroactively applied consistent with the general rule of prospectivity because its purpose is to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act. [Id. at 288, 530 A.2d 334].
The statute is neither unclear, imperfect nor misapplied. Plaintiff suggests that the curative nature of the amendment is to bring within the scope of the act those who had served in later conflicts. The amendments do not "clarify" the old law; they create a new class of veterans with substantive rights that did not previously exist.
DOP argues that given the numerous civil service examination lists outstanding at the time of the amendments, retroactive application would cause administrative chaos. Presumably appointments have been made from some of the lists. Where *91 appointments have not been made, a polling of employees would be required to determine a veteran's eligibility; at the same time appointments would be withheld until such polling is completed. The impact on appointments at the state, county and municipal level would be substantial. If the Legislature had intended such result, this court would not hesitate to recognize such a mandate; however, absent language to the contrary, we conclude that the Legislature well understood the impact of prospective application of the amendments. The Legislature, in creating a new class of veterans, has recognized the efforts expended by veterans in serving the military needs of our country. But, the Legislature has stopped short of sanctioning the type of administrative upheaval which would follow from retroactive application of the amendments. Prospective application fulfills the legislative objective of recognizing veteran's service while at the same time providing for an orderly integration of the veteran's preference into the testing and selection process.
Lastly, Brown argues that the reasonable expectations of the parties warrant retroactive application. Brown confuses hopes and aspirations with "reasonable expectations." While veterans of the various military campaigns included in the amendments had reasonable hopes and desires that at some point in time the Legislature would recognize their military service, it does not follow that these hopes amount to "reasonable expectations." Scores of veterans in public service who served in the various military campaigns prior to January 16, 1992 cannot and will not benefit from these amendments. Past appointments have been made; lists have expired. It is not simply the expectation of Brown that is critical. It is the expectations of the veterans of the past eight years coupled with the expectations of all potential civil service employees that must be considered. Nothing in the language of the amendments nor history of the veteran's preference legislation warrants a reasonable *92 expectation that at any given point in time the Legislature would recognize a particular military campaign and bestow on the veteran the statutory preference.
The Supreme Court in Gibbons v. Gibbons, supra, 86 N.J. at 523-524, 432 A.2d 80 noted that:
The essence of the inquiry is whether the affected party relied to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively.
The Supreme Court characterized the test as one of "manifest injustice" to a party. In applying this standard to retroactive application of the amendments, we recognize that Brown is not the only "party" affected. As noted above, many veterans of the past four military campaigns recognized by the amendments who have submitted to civil service tests received no veteran's preference; numerous non-veterans having taken the examination and being placed on a competitive list have expectations of appointment. "Manifest injustice" would result from the upheaval caused by retroactive application of the amendments. The rights created by the amendment to N.J.S.A. 11A:5-1(b) confer substantial benefits. While no vested rights inure to the benefit of those persons ahead of Brown on the firefighter's list, the expectation of all parties at the time of the closing date of the exam was fixed by the statutory scheme then in place. We are not convinced that the Legislature intended anything to the contrary.
In a decision involving eligibility for a promotional exam, this court determined that a July 1950 amendment to the eligibility requirements would not be applied retroactively to a promotional exam held in February 1950. In Connell v. Carpenter, 9 N.J. Super. 236, 75 A.2d 905 (App.Div. 1950), plaintiffs, veterans of World War II, sought eligibility for a promotional exam for police sergeant which required at least three years of service as a patrolman. Plaintiffs had served for two years. The examination *93 closing date was October 1949; the exam was given in February 1950. In July, 1950 R.S. 11:27-12, now N.J.S.A. 11A:5-4, was amended (L. 1950, c. 305 § 1) to provide that veterans of World War I or World War II would be eligible for the promotional exam with one year of service. In holding that the statute required prospective application, this court stated:
A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied. Kopczynski v. County of Camden, 2 N.J. 419, 424 [66 A.2d 882 (1949)]; 2 Sutherland, Statutory Construction (1943) § 2212. In accordance with the rule applicable to original acts, it is presumed that provisions, added by amendment, affecting substantive rights are intended to operate prospectively. 1 Sutherland, Statutory Construction (1943) § 1936. The 1950 amendment added members who served in World War II to those who "shall be entitled to be admitted to examination for promotion;" but this is clearly intended to operate prospectively. [Id. at 241-42, 75 A.2d 905].
The legislative scheme of recognizing veteran's service and granting a preference in recognition is warranted and salutary. A recognition of veteran's service which allows for an orderly absorption of veterans into the testing regime is warranted and salutary, as well. The prospective application of the amendment achieves both legislative objectives. The amendments will be applied prospectively and not retroactively.
Affirmed.