9 A.3d 1056 (2010)
417 N.J. Super. 329
COMMERCE BANCORP, INC., Plaintiff-Respondent,
v.
INTERARCH, INC., and Shirley Hill, Defendants-Appellants, and
Raymond Klumb, Defendant.
No. A-2832-09T3.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 2010.
Decided December 16, 2010.
*1057 Edwin J. Jacobs, Jr., Atlantic City, argued the cause for appellants (Jacobs & Barbone, P.A., attorneys; Mr. Jacobs and Eric H. Lubin, on the brief).
William M. Tambussi, Westmont, argued the cause for respondent (Brown & Connery, L.L.P., attorneys; Mr. Tambussi, on the brief).
Before Judges SKILLMAN, PARRILLO and ESPINOSA.
The opinion of the court was delivered by
PARRILLO, J.A.D.
issue is whether a corporation that voluntarily indemnifies its agent under the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1 to 16-4, upon advice of counsel and after its own due diligence investigation, may sue, six years later, for restitution of that payment made after a civil jury verdict finding the corporate agent had acted in bad faith and outside the scope of her agency. The motion court construed the applicable provision, N.J.S.A. 14A:3-5(2), to bar the corporation from permissively indemnifying its agent under those circumstances and, therefore, granted summary judgment in favor of the corporation. We disagree and hold that the civil judgment creates no statutory presumption against indemnification. There being no other obstacle, either legal or equitable, to the agent's statutory indemnification, we reverse the grant of summary judgment in favor of plaintiff, Commerce Bancorp, Inc. (Commerce), and remand with direction to dismiss its declaratory judgment action against defendants InterArch, Inc. (InterArch) and Shirley Hill (Hill).
The relevant facts are not materially in dispute and have been set forth in our earlier, related opinion, DiMaria Construction, Inc. v. Interarch, 351 N.J.Super. 558, 563-66, 799 A.2d 555 (App.Div.2001), aff'd o.b., 172 N.J. 182, 797 A.2d 137 (2002). Briefly stated, in December 1993, Commerce hired DiMaria Construction, Inc. (DiMaria) to perform the heating, ventilation, and air conditioning (HVAC) work on a newly constructed office building. Commerce also hired Interarch, owned by Hill, the wife of Commerce's founder and chairperson, Vernon Hill, to do interior design on the same project. In April 1994, Commerce terminated DiMaria, who then demanded arbitration on its breach of contract claim. Following arbitration, DiMaria was awarded $324,475 in damages, which the Law Division confirmed and we upheld. Commerce Bank, N.A. v. DiMaria Constr., Inc., 300 N.J.Super. 9, 13, 20-21, 692 A.2d 54 (App.Div.), certif. denied, 151 N.J. 73, 697 A.2d 546 (1997), cert. denied, 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998). DiMaria *1058 then sued defendants for tortiously interfering with its construction contract with Commerce. A jury found defendants liable and awarded DiMaria $750,000 in compensatory damages and $75,075 in punitive damages. We affirmed the civil judgment, noting that "the jury could have reasonably concluded that defendants acted with malice, that is intentionally and without justification or excuse ... from personal interest and thus stepped outside the scope of their agency ... by scapegoating DiMaria for the project delays." DiMaria Constr., Inc. v. Interarch, supra, 351 N.J.Super. at 567, 570, 573, 799 A.2d 555.
Three months after our affirmance, on August 16, 2001, defendants sought statutory indemnification from Commerce for the DiMaria judgment. N.J.S.A. 14A:3-5(2). Commerce's Board of Directors (Board) referred the matter to a sub-committee of three directors, instructing them to report their findings to the Board's Audit Committee for its review, and to present its recommendation to the full Board. Blank Rome L.L.P., a law firm, was retained to investigate the factual and legal basis for the defendants' indemnification request.
Following a thorough review, Blank Rome issued a twenty-three page opinion letter to the Audit Committee on December 12, 2001, concluding that "[t]here is a legal and factual basis for [Commerce] to indemnify" defendants. Although the report discussed possible defenses to the indemnification claim, Blank Rome also advised that Commerce was not bound by the civil judgment in the DiMaria litigation adverse to defendants; was free to make its own decision; bore the burden of proof on the indemnification claim; and was likely to lose an indemnity lawsuit considering the testimony of its own employee admitting responsibility for DiMaria's discharge.
After considering the advice of outside counsel, the Audit Committee recommended to the Board that it indemnify defendants for the compensatory damages award, current and future interest, and legal fees incurred in the DiMaria matter, but not for the punitive damages component. On January 15, 2002, the Board passed a resolution finding that it would be "in the best interests of the Company ... to provide the indemnification recommended by the Audit Committee ..." and approved an indemnification payment to defendants in the approximate amount of $1.3 million.
During the next five years, following Commerce's merger with another bank, a number of shareholder derivative lawsuits were filed on behalf of the newly formed company against various officers and directors of Commerce, including its chairman, alleging, among other things, that Vernon Hill breached his fiduciary duty to Commerce, wasted corporate assets, and unjustly enriched himself at the corporation's expense. As a result of these multiple lawsuits, Commerce created a Special Litigation Committee (SLC), which, after its own investigation, concluded that the Board was "not fully apprised by their counsel of the full arsenal of legal defenses available to defeat the indemnification demand some of which may have been dispositive of the indemnification claimand consequently, ... the Board could not have known that indemnification was improper."
Relying on the SLC's determination, on January 14, 2008, Commerce filed a two-count complaint sounding in declaratory judgment and breach of contract to set-off the amounts it provided in indemnification *1059 from other monies owed to defendants.[1] Following defendants' answer, both parties cross-moved for summary judgment. After hearing argument, the court granted Commerce's motion for partial summary judgment,[2] and denied defendants' cross-motion.
In so ruling, the judge held that N.J.S.A. 14A:3-5(2) of the Business Corporation Act does not permit a corporation to indemnify its agent after an adverse civil judgment, finding, in effect, that the agent did not act in good faith and in the best interests of the corporation. Although the statute provides that an adverse judgment does not create a presumption that the corporate agent fails to meet the applicable standard of conduct to qualify for indemnification, the judge construed this "anti-presumption" provision to be applicable only to criminal proceedings. The judge rendered this interpretation primarily on the structure of the statute, which addresses civil and criminal proceedings in separate sections, and also because, in his view, this construction leads to a more equitable result. We reach a contrary conclusion.
On appeal, a trial judge's statutory interpretation is reviewed de novo. State v. Gandhi, 201 N.J. 161, 176, 989 A.2d 256 (2010). Equally clear, our review is governed by well-settled rules of statutory construction. Our function, of course, is to ascertain and implement the statute's meaning. State v. Sutton, 132 N.J. 471, 479, 625 A.2d 1132 (1993). This is a simple enough task when a statute is clear and unambiguous. If the language is plain and leads to an unambiguous result, "our interpretative process is over." Gandhi, supra, 201 N.J. at 177, 989 A.2d 256. In such cases, we need not look beyond the statutory terms, which are "accorded their normal sense and significance." Velazquez v. Jiminez, 172 N.J. 240, 256, 798 A.2d 51 (2002); see also N.J.S.A. 1:1-1. On the other hand, in the absence of unambiguous wording, we turn to extrinsic sources for guidance, "[c]entral among them is a statute's legislative history." Gandhi, supra, 201 N.J. at 176-77, 989 A.2d 256; see also No Illegal Points, Citizens for Drivers' Rights, Inc. v. Florio, 264 N.J.Super. 318, 323, 624 A.2d 981 (App.Div.), certif. denied, 134 N.J. 479, 634 A.2d 526 (1993).
At issue here is a provision of the Business Corporation Act that authorizes indemnification of corporate agents who meet applicable standards. Thus, N.J.S.A. 14A:3-5(2) provides:
Any corporation organized for any purpose under any general or special law of this State shall have the power to indemnify a corporate agent against his expenses and liabilities in connection with any proceeding involving the corporate agent by reason of his being or having been such a corporate agent, other than a proceeding by or in the right of the corporation, if

*1060 (a) such corporate agent acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation; and
(b) with respect to any criminal proceeding, such corporate agent had no reasonable cause to believe his conduct was unlawful. The termination of any proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not of itself create a presumption that such corporate agent did not meet the applicable standards of conduct set forth in paragraphs 14A:3-5(2)(a) and 14A:3-5(2)(b).

[(Emphasis added).]
As is plainly evident, this provision is composed of two sentences. The first sentence contains two clauses, (a) and (b), separated by a semi-colon, and the second sentence follows immediately after clause (b). Clause (a) establishes the qualifications for a corporate agent to obtain indemnity in any proceeding in which he or she is involved by reason of his or her agency. Thus, to be eligible, the corporate agent must have acted in "good faith" and "not opposed to the best interests of the corporation." N.J.S.A. 14A:3-5(2)(a). Clause (b) imposes an additional criterion upon a corporate agent seeking indemnity in a criminal proceeding, namely that he or she have "no reasonable cause to believe his [or her] conduct was unlawful." N.J.S.A. 14A:3-5(2)(b). The second sentence, in modification of the first, plainly states that "[t]he termination of any proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere" creates no presumption that the corporate agent failed to meet the standards of conduct enunciated in both clauses (a) and (b). N.J.S.A. 14A:3-5(2) (emphasis added).
Simply because of its structural proximity and connection, the motion judge construed the "anti-presumption" provision of the second sentence as relating only to clause (b) and thus applicable only to corporate agents seeking indemnity in criminal proceedings. In doing so, the judge disregarded the scheme's punctuation, the plain language of the second sentence, which specifically and expressly references both clauses (a) and (b), the statute's legislative history, and concepts of reasonableness, and reached a result incompatible with the legislative design.
"Punctuation is part of an act and may be considered in its interpretation." Moore v. Magor Car Corp., 27 N.J. 82, 87, 141 A.2d 536 (1958). On this score, "`punctuation affords some indication of the true legislative intent' and is not ordinarily to be disregarded." State v. Sperry & Hutchinson Co., 23 N.J. 38, 46, 127 A.2d 169 (1956) (quoting Weinacht v. Bd. of Chosen Freeholders of Bergen, 3 N.J. 330, 334, 70 A.2d 69 (1949)).
The punctuation employed in N.J.S.A. 14A:3-5(2) obviously suggests the applicability of the "anti-presumption" provision to both clauses and therefore to any proceeding, either civil or criminal. As noted, the anti-presumption language is included in a separate sentence distinct from clauses (a) and (b), indicating that the second sentence modifies the preceding sentence in its entirety. Had the anti-presumption provision been set off from clause (b) simply by a comma, rather than a period, the court's restrictive construction would be more persuasive. See Morella v. Grand Union/N.J. Self-Insurers Guar. Ass'n, 391 N.J.Super. 231, 239-41, 917 A.2d 826 (App. Div.2007), aff'd, 193 N.J. 350, 939 A.2d 226 (2008). But that is not the case here.
*1061 To be sure, punctuation is merely one of the many "tools used by the courts to ascertain the legislative intent in a statutory provision[,]" McHale v. State Civil Service Commission, 178 N.J.Super. 371, 378, 429 A.2d 373 (App.Div.), certif. denied, 87 N.J. 402, 434 A.2d 1081 (1981), and is not a dispositive factor in the analysis. U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 454, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402, 417 (1993). Here, there are other axioms of statutory construction that support our plain meaning analysis.
Words and phrases must be read and construed with their context, N.J.S.A. 14A:1-1, and "`[a] word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary.'" Simpkins v. Saiani, 356 N.J.Super. 26, 31-32, 811 A.2d 474 (App.Div.2002) (emphasis added) (quoting Perez v. Pantasote, Inc., 95 N.J. 105, 116, 469 A.2d 22 (1984)). Therefore, "[w]here the Legislature has clearly and explicitly defined a term within a statute, we must assume it did so intentionally and with the intent that its stated definition be applied to that term throughout the statute." Id. at 32-33, 811 A.2d 474 (emphasis added); see also Febbi v. Bd. of Review, 35 N.J. 601, 606, 174 A.2d 481 (1961) ("When the Legislature has clearly defined a term, the courts are bound by that definition."); Nebinger v. Md. Cas. Co., 312 N.J.Super. 400, 406, 711 A.2d 985 (App.Div.1998) ("When the Legislature has specifically defined a term, that definition governs.").
In this regard, throughout the Business Corporation Act, the Legislature employed the term "proceeding" multiple times. For that reason, the Legislature provided a consistent meaning by defining that term in N.J.S.A. 14A:3-5(1)(e), inclusively, as

any pending, threatened or completed civil, criminal, administrative or arbitrative action, suit or proceeding, and any appeal therein and any inquiry or investigation which could lead to such action, suit or proceeding....
[(emphasis added).]
Thus, when the definition of "proceeding," as set forth in N.J.S.A. 14A:3-5(1)(e), is applied to the use of that term in the second sentence of N.J.S.A. 14A:3-5(2), it is obvious that the anti-presumption language relates to both civil and criminal matters. Further support for this interpretation is found in the plain language of the anti-presumption sentence, which explicitly and directly refers back to the two sets of standards in clauses (a) and (b) of the first sentence.
Lest there be any doubt, a review of the original legislation and its later amendments confirms that the anti-presumption language applies to both clauses (a) and (b) of N.J.S.A. 14A:3-5(2). As noted, the provision was enacted as part of the New Jersey Business Corporation Act in 1968. N.J.S.A. 14A:1-1. As enacted, Senate Bill 884 placed the second sentence of N.J.S.A. 14A:3-5(2) containing the anti-presumption language in a separate paragraph, apart from clauses (a) and (b). L. 1968, c. 350. The law was subsequently amended in 1973 pursuant to Senate Bill 1063, which left unchanged the placement of the anti-presumption language in a separate paragraph following clause (b). L. 1973, c. 366, § 8.
It was only in 1987, pursuant to Senate Bill 2510, which amended the law on issues unrelated to the indemnification of corporate agents, that the anti-presumption language was inexplicably appended to the end of clause (b) so that it was no longer placed in its own paragraph. L. 1987, c. 35, § 2. This appears to have been a mere scrivener's error, however, inasmuch as the anti-presumption language was retained in its own distinct sentence. Moreover, *1062 there was neither any substantive modification to N.J.S.A. 14A:3-5(2) nor any indication in the legislative history encompassing the bill's enactment to suggest a change in the types or species of proceedings that qualify for indemnification of corporate agents. Although subsequent session laws display the anti-presumption language as attached to clause (b), we cannot permit such an evident mistake to distort the otherwise clear and plain meaning of the statute. In re Marvin, 97 N.J.Super. 62, 73, 234 A.2d 408 (App.Div.1967), aff'd, 53 N.J. 147, 249 A.2d 377, cert. denied 396 U.S. 821, 90 S.Ct. 62, 24 L.Ed.2d 72 (1969); Raybestos-Manhattan, Inc. v. Glaser, 144 N.J.Super. 152, 171-72, 365 A.2d 1 (Ch.Div.1976), aff'd, 156 N.J.Super. 513, 384 A.2d 176 (App.Div. 1978).
The Model Business Corporation Act (Model Act), which the Legislature relied upon in enacting the Business Corporation Act, further supports the construction that the second sentence of N.J.S.A. 14A:3-5(2) applies to the entire section. As pertinent here, the 1969 Revision of the Model Act provides:
A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was [an] agent of the corporation, ... against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

[Revised Model Business Corporation Act § 5(a) (1969) (emphasis added).]
While the language of § 5(a) of the 1969 Revision of the Model Act tracks that of N.J.S.A. 14A:3-5(2), its unified structure makes even more evident that the anti-presumption language contained in the second sentence of § 5(a) applies to both civil and criminal proceedings, which are referenced in the immediately preceding sentence in the same paragraph. Rather than distinguishing the different standards of conduct in separate clauses, as New Jersey's statute does, the 1969 revision simply provides that termination of any proceeding by judgment or conviction does not create a presumption that the corporate agent was not acting in good faith or in the best interests of the corporation.[3]
*1063 Here, the motion judge held not only that the anti-presumption protection did not extend to civil proceedings, but that the adverse civil judgment had the absolute preclusive effect of barring indemnification of defendants. Such a restrictive interpretation, of course, leads to the anomalous result of conferring a benefit upon a corporate agent convicted of a crime relating to his corporate agency and withholding that same benefit from those found only civilly liable. Under this interpretation, a defendant held more seriously culpable under the highest standard of proof is entitled to statutory indemnification if he reasonably believed his conduct was lawful, whereas a defendant who merely suffers an adverse civil judgment adjudged by a much lower standard of proof is deprived of the identical benefit. "We construe legislation[, however,] to avoid such an absurd result." Miller v. Estate of Sperling, 166 N.J. 370, 383, 766 A.2d 738 (2001); State v. Provenzano, 34 N.J. 318, 322, 169 A.2d 135 (1961).
Lastly, the motion court determined that its construction was consistent with the equities of the matter. We find just the opposite.
Back on January 15, 2002, Commerce indemnified its chairman's wife and her interior design company following its own comprehensive due diligence investigation, which included review of both a jury's verdict assessing punitive damages against defendant Hill as well as our affirmance, indicating that implicit in the jury's verdict was a finding that defendants acted outside the scope of their agency. Thereafter, on January 16, 2008, one day shy of six years after the indemnification payment, Commerce sued defendants in declaratory judgment to recoup those monies. Yet the long delay cannot reasonably be explained other than by a change in corporate ownership and composition of the Board, inasmuch as no new or additional information as to defendants' culpable conduct had surfaced in the interim. Having complete authority under N.J.S.A. 14A:3-5(2) to either dispute defendants' indemnity claim or indemnify them for their costs and expenses in the civil litigation, the Board exercised its statutory prerogative back in 2002 with full comprehension of the facts upon which defendants' demand was made. The fact that there may now exist, years later, a different legal gloss on a known and undisputed state of facts possibly suggesting an erroneous conclusion as to its legal effect does not alter the equities of the situation, excuse the delay, or itself justify a belated cause of action for recoupment or reclamation of the monies at issue.[4] Under the circumstances, we find no basis in law or equity to support Commerce's lawsuit to recover back the indemnification payments voluntarily and knowingly made to defendants. In our view, this matter demands finality.
Reversed and remanded with direction to enter judgment of dismissal.
NOTES
[1] Specifically, the first count of the complaint sought a declaratory judgment that Commerce "had no duty to indemnify" defendants for their expenses incurred as a result of the DiMaria litigation, and declaring that Commerce was "entitled to the recoupment and/or restitution of approximately $1,600,000" for improper indemnification payments. The second count, a breach of contract claim, referenced the December 1993 contract between InterArch and Commerce relating to the construction project underlying the DiMaria litigation, alleging that InterArch breached that agreement "through its malicious and bad faith acts as well as those of Mrs. Hill ... that were outside the scope of InterArch's authority...."
[2] By court order, the parties fixed Commerce's damages at $1,600,000 and stipulated to the dismissal of the second count of plaintiff's complaint, thereby rendering the court's November 19, 2009 order final.
[3] The Model Act's indemnification provisions have been extensively revised. Yet its permissible indemnification provision, which today applies only to directors of the corporation, provides in a separate paragraph that "[t]he termination of a proceeding by judgment, order, settlement, or conviction, or upon a plea of nolo contendere or its equivalent, is not, of itself, determinative that the director did not meet the relevant standard of conduct described in this section." Revised Model Business Corporation Act § 8.51(c) (2002) (emphasis added). Thus, the current revision of the Model Act expressly states that this language applies to the entire section.
[4] N.J.S.A. 14A:3-5(6) does not require a finding otherwise. That provision deals with circumstances far different than applicable here, specifically, where a corporation advances a corporate agent the costs of litigation prior to final judgment and by explicit undertaking, the agent agrees that if it is determined by eventual judgment that the agent is no longer entitled to indemnification, he or she must repay the advanced sums. Here, the indemnification payment was made well after termination of the DiMaria litigation, and only after the Board carefully studied both its legal options and the potential business consequences of not making the requested payment.