254 N.J. Super. 310 (1992)
603 A.2d 521
MURIAL STEVENSON, INDIVIDUALLY AND AS ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF HOWARD STEVENSON, PLAINTIFF-RESPONDENT,
v.
KEENE CORPORATION, ET AL., DEFENDANTS, AND PORTER-HAYDEN COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1991.
Decided February 27, 1992.
*311 Before Judges MICHELS, HAVEY and CONLEY.
Andrew Berry argued the cause for appellant Porter-Hayden Company (McCarter & English, attorneys; Michael A. Tanenbaum, of counsel; Nancy McDonald on the brief).
Jane B. Cantor argued the cause for respondent (Garruto, Galex & Cantor, attorneys; Bryan Garruto, and Jane B. *312 Cantor, of counsel; Jane B. Cantor and Frances A. Tomes, on the brief).
The opinion of the court was delivered by CONLEY, J.S.C., temporarily assigned.
On leave granted, defendant Porter-Hayden Company appeals an interlocutory in limine ruling that the 1987 amendments to the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., which modify heretofore unrestricted joint liability in tort litigation, are not applicable to asbestos tort litigation. The trial judge held the exception to the amendments for "environmental tort actions", provided in N.J.S.A. 2A:15-5.3d, includes asbestos torts. The trial judge, thus, held that defendants found responsible in such tort litigation remain jointly and severally liable under the Comparative Negligence Act. We agree and affirm.
Plaintiffs Howard and Muriel Stevenson filed suit against 26 defendants alleging personal injuries and loss of services due to Howard's exposure to asbestos. When plaintiff Howard Stevenson thereafter died of mesothelioma, an asbestos-related disease, plaintiff Muriel Stevenson amended the complaint to include wrongful death and survivorship actions.
The complaint alleges Howard was exposed to asbestos both directly and indirectly in the following ways:
1. Howard shared a room with his brother George for seven years while George was employed in a company making asbestos shingles. During this time George would come home wearing his work clothes covered with asbestos dust.
2. During Howard's marriage he was daily exposed to his own residential driveway which had been filled with free asbestos waste. The waste had been distributed to South Bound Brook residents by Ruberoid, a local company.
3. Howard was exposed through his work at American Cyanamid Company between 1937 and 1982. During this period Howard held several jobs, working mostly as a welder and engineer. Though he occasionally handled asbestos products directly, his exposure stemmed mainly from airborne asbestos dust produced at work stations near him. Defendant Porter-Hayden was the primary distributor of asbestos to American Cyanamid.

*313 4. On a six-month hiatus from his work at American Cyanamid in 1940 to 1941, Howard worked at a federal shipyard as a welder. All trades worked in tight quarters and conditions were dusty; Howard would sweep the debris of asbestos scrap, residue and powder that fell from insulation work. A bankrupt company was the major supplier of asbestos to this jobsite.
5. During another hiatus from American Cyanamid, eighteen months long from 1944 to 1946, Howard served the Navy as a fireman in the boiler rooms of three ships. The boilers and pipes were insulated in asbestos, and at the boiler's start up, asbestos dust would be blown around.
Prior to trial, two defendants were dismissed, three had declared bankruptcy, and seventeen had settled with plaintiff. Remaining defendants included Porter-Hayden, Armstrong World Industries, Inc., Am-Chem. Inc., GAF, Flexitallic Inc., Turner & Newell (TNN PLC), and the Manville Corporation Asbestos Disease Compensation Fund. Of these defendants Armstrong, Am-Chem, GAF, and Flexitallic are represented through the Center for Claims Resolution (CCR) a trial and settlement consortium of 21 asbestos companies. It is Porter-Hayden's contention that if plaintiff receives an award of damages, she is limited in her recovery against each of the remaining specific defendants to several liability only, consistent with the provisions of N.J.S.A. 2A:15-5.3, as amended in 1987.
Prior to 1987, N.J.S.A. 2A:15-5.3 permitted a plaintiff recovering a damage award in tort litigation to obtain:
... the full amount of the molded verdict from any party against whom such recovering party is not barred from recovery. Any party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tort feasors.
In the early and mid 1980's, concern over the insurance industry and tort litigation prompted many reports on both a national and state level. See United States Attorney General's Tort Policy Working Group, Report on the Causes, Extent, and Policy Implications of the Current Crisis in Insurance Availability and Affordability (Feb. 1986); National Conference of State Legislatures, Resolving the Liability Insurance Crisis: State Legislative Activities in 1986 (Collected Papers) (July 1986); New Jersey Department of Insurance, Report to the Legislature *314 on the Commercial Insurance Deregulation Act of 1982 (April 1986); State of New Jersey County and Municipal Government Study Commission, Report to the Governor and Legislature, Local Government Liability Insurance; A Crisis (May 1986); New Jersey Insurance Task Force on Environmental Issues, Report (April 1986).
There were, as well, numerous New Jersey Assembly hearings: Insurance Problems Being Experienced by Public Entities: Public Hearing before the New Jersey Assembly Insurance Committee, February 18, 1986; Insurance Problems Being Experienced by Public Entities: Public Hearing before the New Jersey Assembly Insurance Committee, February 25, 1986; Insurance Problems Experienced by Public Entities: Public Hearing before the New Jersey Assembly Insurance Committee, February 28, 1986; Professional, Business, and Nonprofit Organizations' Liability Insurance: Public Hearing before the New Jersey Assembly Insurance Committee, April 10, 1986; Professional, Business, and Nonprofit Organizations' Liability Insurance: Public Hearing before the New Jersey Assembly Insurance Committee, April 14, 1986.
Senate hearings were also conducted: Senate Bill 1718 (Establishes the New Jersey Intergovernmental Excess Liability Commission): Public Hearing on S. 1718 before the New Jersey Senate Labor, Industry and Professions Committee, March 5, 1986; Liability Insurance Issue: Public Hearing before the New Jersey Senate Labor, Industry and Professions Committee, July 28, 1986; Liability Insurance Crisis: Public Hearing before the New Jersey Senate Judiciary Committee and the New Jersey Senate Labor, Industry and Professions Committee, July 30, 1986.
The Reports, Papers and oral and written submissions during the Assembly and Senate hearings all reveal a then growing concern over the willingness of insurance companies to provide insurance for tort litigation and its affordability. Many perceived that the concept of joint and several liability resulted in *315 "deep pockets" being targeted for liability even though in a particular case actual fault might be minimal. Various other causative factors for the "crisis" were posited-underpricing of policies in the 1970's; large underwriting losses; explosive damage awards; a radical increase in the number of suits filed particularly in the areas of products liability, medical malpractice, and claims against local government; excessive transaction costs such as attorneys fees and other litigation expenses; the unpredictability of future tort law; the lack of stability in law generally which would allow risk assessment with some degree of confidence. Recommendations to remedy the problem in the area of tort reform law included:
1. Retention of fault as the basis for liability.
2. Basing causation findings on credible scientific and medical evidence and opinions.
3. Elimination of joint and several liability (except in the case of actual concerted action).
4. Capping non-economic damages.
5. Provision for periodic payments of future economic damages.
6. Reduction of awards by collateral sources.
7. Scheduling (reducing) attorneys fees.
8. Development of alternative dispute resolution mechanisms.
Following numerous hearings held throughout the State in 1986, at which many of these concerns and recommendations were expressed, S. 2703 was introduced. Pertinent to this appeal, S. 2703 proposed to amend N.J.S.A. 2A:15-5.3 to provide the following:
Except as provided in subsection d. of this section, the party so recovering may recover as follows:
a. The full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages.
b. The full amount of economic damages plus the percentage of noneconomic damages directly attributable to that party's negligence[1] from any party *316 determined by the trier of fact to be more than 20% but less than 60% responsible for the total damages.
c. Only that percentage of the damages directly attributable to that party's negligence from any party determined by the trier of fact to be 20% or less responsible for the total damages.
d. With regard to environmental tort actions, the party so recovering may recover the full amount of the damage award from any party determined to be liable.
e. Any party who is compelled to pay more than his percentage share may seek contribution from the other joint tortfeasors.
f. As used in this section:
(1) "Environmental tort action" means a civil action seeking damages for personal injuries or death where the cause of the damages is the negligent manufacture, use, disposal, handling, storage or treatment of hazardous or toxic substances.
(2) "Noneconomic loss" means subjective, nonmonetary losses, including, but not limited to, pain and suffering, inconvenience, mental anguish, emotional distress, loss of society and companionship, loss of consortium, and destruction of the parent-child relationship.
The statement accompanying this bill when originally proposed stated:
The term "joint and several liability" means that if a plaintiff successfully sues a number of defendants in a suit for personal injury or wrongful death, the plaintiff may collect the total amount of the award from any defendant found liable. That defendant is then entitled to seek from the other defendants found liable their proportional shares of the award.
This bill modifies "joint and several liability" so that only a defendant determined to be 60% or more responsible for damages would be liable for the total amount of the award. A defendant found to be more than 20% but less than 60% responsible for the damages would be responsible for the total amount of any economic loss but only that percentage of the noneconomic loss directly attributable to his negligence. A defendant found to be 20% or less responsible for the damages would be liable only for the percentage of the award directly attributable to his negligence. This modification would not be *317 applicable to cases involving environmental torts where a plaintiff could still recover the full award from any defendant found liable.
Following introduction of S. 2703, an additional subsection was added. It provided:
Nothing in this act shall be construed to apply to any action brought by the Department of Environmental Protection, or any other governmental agency or entity pursuant to the environmental laws of this State, including, but not limited, to the "Solid Waste Management Act" P.L. 1970, c. 39; (C. 13:1E-1 et seq.); the "Water Pollution Control Act" P.L. 1977, c. 74; (C. 58:10A-1 et seq.); the "Spill Compensation and Control Act" P.L. 1976, c. 141 (C. 58:10-23.11 et seq.); the "Major Hazardous Waste Facilities Siting Act" P.L. 1981, c. 279 (C. 13:1E-49 et seq.); the "Sanitary Landfill Facility Closure and Contingency Fund Act" P.L. 1981, c. 306 (C. 13:1E-100 et seq.); the "Environmental Cleanup Responsibility Act" P.L. 1983, c. 330 (C. 13:1K-6 et seq.); the "Air Pollution Control Act (1954)" P.L. 1954, c. 212 (C. 26:2C-1 et seq.); the "Toxic Catastrophe Prevention Act" P.L. 1985, c. 403 (C. 13:1K-19 et seq.); the "Pesticide Control Act of 1971" P.L. 1971, c. 176 (C. 13:1F-1 et seq.); and the "Radiation Protection Act" P.L. 1958, c. 116 (C. 26:2D-1 et seq.).
When this addition was added to the original version, the statement which accompanied the initial draft remained the same, except a single sentence paragraph was added to the end. It provided:
The amendments adopted clarify that the bill's provisions are not applicable to actions brought pursuant to New Jersey's environmental laws.
Enacted as L. 1987, c. 325 and effective December 18, 1987, the amendments to N.J.S.A. 2A:15-5.3 remained as proposed in S. 2703. The additional section added in the second draft of the bill became N.J.S.A. 2A:15-5.4.
Interpretation of a statute requires analysis of the statute's plain language. State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989); Dempsey v. Mastropasqua, 242 N.J. Super. 234, 238, 576 A.2d 335 (App.Div. 1990). Particular words and phrases must be construed within their context and unless inconsistent with the Legislature's manifest intent or unless another meaning is expressly indicated, they must be given their generally accepted meaning. State v. Davis, 175 N.J. Super. 130, 417 A.2d 1075 (App.Div.), certif. denied 85 N.J. 136, 425 A.2d 291 (1980). When the Legislature has specifically defined a term, that definition governs. Eagle *318 Truck Transport, Inc. v. Board of Review Division of Employment, 29 N.J. 280, 148 A.2d 822 (1959).[2]
*319 Here, the Legislature expressly defined "environmental tort action". In this respect, N.J.S.A. 2A:15-5.3f(1) defines such action as:
... a civil action seeking damages for personal injuries or death where the cause of the damages is the negligent manufacture, use, disposal, handling, storage or treatment of hazardous or toxic substances.
As previously noted, plaintiffs contend Howard was exposed to asbestos in a variety of ways, both directly and indirectly. His brother worked with asbestos shingles and came home with asbestos dust on his clothes; asbestos waste was put down on his driveway, exposing him to the dust therefrom; he was exposed to airborne asbestos dust at his various jobs, and finally he was exposed to asbestos from pipe insulation at a Navy yard where he worked. His wife contends all of these exposures contributed to his mesothelioma and death. Plainly, one or more of these alleged direct and indirect exposures would fall within the type of conduct set forth in the exception, i.e. negligent manufacture, use, disposal, handling, storage or treatment of the product.
Defendant, however, argues asbestos is not a hazardous or toxic substance but that those terms, as used in the exception, are intended to relate to pollutants subject to the pollution statutes referred to in N.J.S.A. 2A:15-5.4. We reject this contention. N.J.S.A. 2A:15-5.4 by its own terms concerns a type of litigation distinct from "environmental tort actions" referred to in N.J.S.A. 2A:15-5.3d. "Environmental tort actions" are civil actions for damages for personal injuries. N.J.S.A. 2A:15-5.4, on the other hand, titled "Department of environmental protection and similar agencies; exemption from act," applies to governmental enforcement actions brought pursuant to certain specific environmental statutes. While the types of conduct referred to in N.J.S.A. 2A:15-5.3d may trigger governmental enforcement actions encompassed by N.J.S.A. 2A:15-5.4, the actions envisioned in N.J.S.A. 2A:15-5.3d as defined in 5.3f(1) are aimed at certain types of personal injury litigation, not governmental enforcement actions. Moreover, *320 they are law suits filed by individuals seeking money damages; not suits filed by governmental agencies which may seek injunctive relief and assessment of civil penalties. "Environmental tort actions" are simply not synonymous with governmental pollution enforcement actions.[3]
We reject defendant's further contention that the definition of "environmental tort actions" must be construed within the context of N.J.S.A. 2A:15-5.4. Both the language and the history of this subsection inescapably lead to the conclusion that it was intended as a separate exception focusing only upon governmental enforcement actions. As we have already noted, on its face it refers only to such actions. Moreover, it was not added as a modifying phrase in the definition of "environmental tort actions" at 5.3f(1), but rather was proposed as a wholly separate subsection. We read the last paragraph of the Senate statement to refer specifically to this subsection. In this respect, we note it was not until N.J.S.A. 2A:15-5.4 was proposed in the second draft of S. 2703 that that paragraph appeared in the statement.
Defendant further argues that asbestos litigation does not involve a tort against the environment but rather is a products liability action for personal injury and wrongful death based upon strict liability claims. While the particular label applied to asbestos litigation may frequently be that of products liability, there can be no question but that the product itself and the risks it poses to people when introduced into the environment *321 are both toxic and hazardous. See Fischer v. Johns-Manville Corp., 103 N.J. 643, 650-51, 663-64, 512 A.2d 466 (1986); Beshada v. Johns-Manville Products Corp., 90 N.J. 191, 196-97, 447 A.2d 539 (1982). See also Mauro v. Raymark Industries, Inc., 116 N.J. 126, 561 A.2d 257 (1989); Grassis v. Johns-Manville Corp., 248 N.J. Super. 446, 591 A.2d 671 (App.Div. 1991); Sullivan v. Combustion Engineering, 248 N.J. Super. 134, 590 A.2d 681 (App.Div.), certif. denied 126 N.J. 341, 598 A.2d 897 (1991).
As such, asbestos is subject to both federal and state environmental regulations. Toxic Substances Control Act (hereinafter referred "TSCA"), 15 U.S.C. §§ 2601 to 2671; the Asbestos Hazard Emergency Response Act ("AHERA"), 15 U.S.C. §§ 2641 to 2655; the Asbestos Information Act of 1988, 15 U.S.C. 2607, Pub.L. 100-577, October 31, 1988, 102 Stat. 2901. See also 29 C.F.R. §§ 1910.1001 and 1910.1101 (1991) (OSHA limits occupational exposure to asbestos); 40 C.F.R. §§ 61.140 to 61.156 (1991) (EPA regulation establishing national emission standards for asbestos); 40 C.F.R. §§ 763.60 to 763.179 (1991) (EPA regulations pursuant to TSCA). See N.J.S.A. 13:lD-9, N.J.S.A. 13:1E-1 et seq. and N.J.A.C. 7:26-1.4, -2.12 and -3.5 (authorizing DEP to regulate the transportation and disposal of asbestos and asbestos containing material); the Asbestos Control and Licensing Act, N.J.S.A. 34:5A-32 to -42 (authorizing the New Jersey Departments of Health and Labor jointly in consultation with the Commissioner of the Department of Environmental Protection to adopt regulations providing a standardized training course for asbestos workers, licensing asbestos abatement workers and issuing working performance permits as well as standards for asbestos application, enclosure, removal and encapsulation); the State School Aid Act for Asbestos, N.J.S.A. 18A:58-68 to -76 (authorizing the State Board of Education to provide direction and aid for removal of asbestos from educational facilities); the Asbestos Hazard Abatement Subcode, N.J.A.C. 5:23-8 (regulating abatement of asbestos materials in schools and public buildings); N.J.A.C. 8:60-1 and *322 12:120-1 (New Jersey Department of Health and Labor joint regulations promulgated pursuant to the Asbestos Control and Licensing Act); N.J.A.C. 12:100-12 (New Jersey Department of Labor regulations under New Jersey Public Employees' Occupational Safety and Health Act, N.J.S.A. 34:6A-25 et seq., providing safety and health standards for public employees' asbestos exposure). Moreover, pursuant to N.J.S.A. 34:5A-4, asbestos is specifically contained on the environmental hazardous substance list promulgated by the Department of Environmental Protection. N.J.A.C. 7:1G-2.1.
Thus, exposure to asbestos caused by negligent manufacture, use, disposal, handling, storage and treatment with resulting injury is a "tort against the environment," N.J. Transportation Dep't v. PSC Resources, Inc., 175 N.J. Super. 447, 459, 419 A.2d 1151 (Law Div. 1980), involving a hazardous and toxic substance.
Finally defendant argues joint and several liability in massasbestos litigation has left many defendant companies either in bankruptcy or on the verge of bankruptcy and that strong policy considerations militate against joint and several liability under these circumstances. Similar policy consideration, however, were posited and rejected in the context of punitive damages in asbestos litigation. See Fischer v. Johns-Manville Corp., 103 N.J. at 665-66, 512 A.2d 466. Moreover, on the other side of the policy scale is the concomitant concern that innocent victims of mass exposure be readily able to obtain full recovery. Defendant argues there are valid policy reasons for imposing joint and several liability on pollution tortfeasors given the serious impact upon the environment and the difficulty, if not impossibility of ascertaining the sources of pollution. See United States v. Stringfellow, 661 F. Supp. 1053, 1060 (C.D.Cal. 1987); United States v. A & F Materials Co. Inc., 578 F. Supp. 1249, 1253 (S.D.Ill. 1984). Precisely the same policy considerations, however, apply to asbestos litigation. See Fischer v. Johns-Manville Corp., 103 N.J. at 660-61, 512 A.2d 466; Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 14, 568 A.2d 1196 (App.Div. 1989).
*323 But more importantly, it is for the Legislature to weigh these various policy considerations. Borough of Matawan v. Monmouth County Bd. of Taxation, 51 N.J. 291, 298, 240 A.2d 8 (1968); Dixon v. Gassert, 26 N.J. 1, 9, 138 A.2d 14 (1958). See Secallus v. Muscarelle, 245 N.J. Super. 535, 537-38, 586 A.2d 305 (App.Div.), aff'd o.b. 126 N.J. 288, 597 A.2d 1083 (1991). That is what it has done in enacting amendments to the Comparative Negligence Act which the trial judge held, and we agree, except asbestos tort litigation from the joint and several liability modifications.
We affirm and remand for further proceedings.
NOTES
[1] The term "negligence" is used throughout the Comparative Negligence Act, and is again used in the 1987 amendments. Thus, N.J.S.A. 2A:15-5.3f(1) in defining "environmental tort actions" refers to "negligent manufacture...." In its main appellate brief defendant argued the use of the term "negligence" suggests an intent not to include any other type of tort litigation including strict liability litigation. Historically, however, the Comparative Negligence Act has been applied to all tort litigation, including strict liability causes of action. Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 162-63, 406 A.2d 140 (1979); Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 562-63, 570, 410 A.2d 674 (1980). See Fischer v. Johns-Manville Corp., 103 N.J. 643, 653, 512 A.2d 466 (1986). It has, further, been applied to asbestos "strict liability" actions. Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 568 A.2d 1196 (App.Div. 1989). We discern no different intent on the part of the Legislature arising from a continuation of that term in the amendments.
[2] Defendant argues other states' amendments to their joint and several liability statutes provide guidance for interpreting our statute. We, however, can discern no consistent pattern of treatment of such amendments in so far as they may affect asbestos litigation. See Wash. Rev. Code Ann. § 4.22.070 (West 1988 & Supp. 1991) ("hazardous wastes or substances" exception to abolishment of joint and several liability held to encompass asbestos exposure in Sofie v. Fibreboard Corp., 112 Wash.2d 636, 771 P.2d 711 (1989), amended, 780 P.2d 260 (Wash. 1989)); Ariz. Rev. Stat. Ann. § 12-2506 (1982 & Supp. 1991) ("hazardous wastes or substances" exception to abolishment of joint and several liability); Tex.Civ.Prac. & Rem.Code Ann. § 33.013 (19 ) ("toxic tort" exception to modification of joint and several liability includes cases of "exposure to ... harmful organic or mineral substances", exception applicable to asbestos cases, McNair v. Owens-Corning Fiberglas Corp., 890 F.2d 753 (5th Cir.Tex. 1989)); Haw. Rev. Stat.Ann. § 663-10.9 (1988 & Supp. 1991) (repealed effective October 1, 1993) ("toxic and asbestos-related torts" and "strict and products liability torts" excepted from abolishment of joint and several liability); Nev. Rev. Stat. Ann. § 41.141 (Michie 1986 & Supp. 1991) (actions based on "strict liability", "emission ... of a toxic or hazardous substance," "a product which is manufactured, distributed, sold or used in this state" are excepted from the abolition of joint and several liability); N.Y.Civ.Prac. L. & R. §§ 1601, 1602 (Consol. 1978 & Supp. 1991) (exceptions to modification of joint and several liability where a hazardous substance was "unlawfully released into the environment" and product liability actions where the manufacturer would have been liable under strict liability and jurisdiction over that manufacturer could not be obtained). But see Ill. Ann. Stat. ch. 110, para. 2-1117 to 1118 (Smith-Hurd 1983 & Supp. 1991) (excepting cases of "discharge into the environment of any pollutant" from modification of joint and several liability); Co.Rev.Stat. § 13-21-111.5 (1987 & 1991 Supp.) (only concerted action cases excepted from abolition of joint and several liability, but no exception for strict products liability actions, O'Quinn v. Wedco Technology, 746 F. Supp. 38 (D.Colo. 1990)); Cal.Civ.Code §§ 1431.1 and 1431.2 (West 1982 & 1991 Supp.) (no exceptions to modification of joint and several liability); Or. Rev. Stat. § 18.485 (1988 & Supp. 1990, 1991) (exception to modification of joint and several liability only where state or federal hazardous substance or pollution regulation is violated); Fla. Stat. Ann. § 768.81 (West 1986 & Supp. 1991) ("pollution" cases excepted from modification of joint and several liability along with certain statutory causes of action). Some states have declined to modify their joint and several liability provisions: 42 Pa. Cons. Stat. Ann. § 7102 (1982 & Supp. 1991); N.C. Gen. Stat. §§ 1B-1 to 1B-7 (1983 & Supp. 1991), State Farm Mut. Auto Ins. v. Holland, 324 N.C. 466, 380 S.E.2d 100, 103 (1989); Mich. Stat. Ann. § 27A. 2925(1) (Callaghan 1988 & Supp. 1991), Laney v. Celotex Corp., 901 F.2d 1319, 1321 (6th Cir.1990).
[3] We note, moreover, that during the same legislative session, an exception for "environmental tort action" was provided in the Products Liability Act, N.J.S.A. 2A:58C-1 et seq. In this respect, N.J.S.A. 2A:58C-6 states that "[t]he provisions of the Act should not apply to any environmental tort action." N.J.S.A. 2A:58C-1b(4) defines such action as "... a civil action seeking damages for harm where the cause of the harm is exposure to toxic chemicals or substances, but does not mean actions involving drugs or products intended for personal consumption or use." This definition has been construed to encompass asbestos tort litigation. Dreier, Goldman and Farer, Products Liability and Toxic Tort Law in New Jersey, p. 127 (6th ed. 1988).