711 A.2d 985 (1998)
312 N.J. Super. 400
Leroy NEBINGER, an Incompetent by his Guardian Ad Litem, Linda BARRETT, Glayds Lewis, Guardian Ad Litem for Elizabeth Wells, an Incompetent, and Dolores Cappuccio, Plaintiffs-Appellants,
v.
MARYLAND CASUALTY COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1998.
Decided July 14, 1998.
*986 Benjamin Podolnick, Northfield, for plaintiff-appellant Leroy Nebinger (Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, attorneys; Joan Freeman Meyer, Haddonfield, on the joint brief).
James W. Johnson and W. Steven Berman, Cherry Hill, for plaintiffs-appellants Glayds Lewis and Delores Cappuccio (Hollstein, Keating, Cattell, Johnson & Goldstein, Esqs., Philadelphia, PA; Genetta, Katz, Ethin, Esqs., and Shain Law Center, attorneys on the joint brief).
Frank A. LaSalvia, Westmont, for defendant-respondent Maryland Casualty Company (Daniel & Hofstron, attorneys).
Before Judges D'ANNUNZIO, A.A. RODRIGUEZ and COBURN.
The opinion of the court was delivered by
RODRIGUEZ, A.A., J.A.D.
The issue presented in these consolidated appeals is whether a minibus used by a senior center to transport its paying clients to various activities is a "vehicle used for transportation of passengers for hire" within the meaning of N.J.S.A. 39:1-1 so as to require medical expense benefits (MEB) coverage pursuant to N.J.S.A. 17:28-1.6. We hold that such use of the vehicle does not constitute transportation of passengers for hire within the meaning of the statute.
The material facts are not in dispute. On September 17, 1993, a paratransit minibus, owned and operated by Senior Care Centers of America, Inc. (Senior Care) collided with a truck. Senior Care is a for-profit privatelyheld corporation which provides adult medical day-care services to the elderly and handicapped. Senior Care's clients pay weekly fees for a full day of programs involving various nursing and social work services, individualized and therapeutic activities, and other health care related services and activities. For the same fee, Senior Care provides transportation to activities as well as back *987 and forth from the clients' homes to the Center each day.
Leroy Nebinger, Elizabeth Wells, and Dolores Cappuccio (plaintiffs) were Senior Care clients who were injured in the collision between the minibus and the truck. They sought MEB from Maryland Casualty Company (Maryland), the insurance carrier for their host vehicle.[1] Maryland denied their request asserting that the policy issued to Senior Care for the minibus did not provide MEB coverage and that such coverage was not mandated for that vehicle. Prior to the accident, Senior Care inquired of the Department of Transportation (DOT) regarding the proper license, plating, registration, and inspection of its minibuses. The Director of the Office of Regulatory Affairs for the DOT informed Senior Care that:
[T]he New Jersey Department of Transportation finds that the described van service of Senior Care Centers of America, Inc., is not at this time for-hire passenger transportation and, therefore, is not autobus service under the jurisdiction of this Department. Should there be a change in the nature of this service, such as the introduction of a fare or the use of a separate carrier, the service would need to be re-evaluated at that time.
Since this Department of Transportation does not deem the described service as autobus operation, the use of "omnibus" license plates on this vehicle would not be correct.
Plaintiffs filed a declaratory judgment action and moved for summary judgment. Maryland cross-moved for summary judgment. All parties agreed at oral argument that resolution of this dispute turned on whether the minibus was a "motor bus" as defined by N.J.S.A. 17:28-1.5. If so, MEB coverage is mandated by N.J.S.A. 17:28-1.6.
The judge denied plaintiffs' motion and granted Maryland's motion for summary judgment concluding that the fact that Senior Care received compensation for the services rendered did not, by itself, make the minibus a vehicle for hire. He found that the minibus "was not generally available to the public ... It's used for [Senior Care's] clients on a limited basis to provide transportation which is an essential component of the services rendered." The judge also found persuasive the DOT letter. Plaintiffs appealed.
On appeal, plaintiffs contend that the minibus is a motor bus pursuant to N.J.S.A. 17:28-1.5 because it is a vehicle used to transport passengers for hire. We disagree. At the outset we note that the determination by the DOT that the minibus "is not at this time for-hire passenger transportation" is persuasive but not determinative of the issue before us.
N.J.S.A. 17:28-1.6 provides:
a. Every owner, registered owner or operator of a motor bus registered or principally garaged in this State shall maintain medical expense benefits coverage, under provisions approved by the commissioner, for the payment of benefits without regard to negligence, liability or fault of any kind, to any passenger who sustained bodily injury as a result of an accident while occupying, entering into or alighting from a motor bus.
b. Medical expense benefits coverage shall include the payment of reasonable medical expenses in an amount not to exceed $250,000 per person per accident. In event of death, payments shall be made to the estate of the decedent.
From this language, it is clear that the MEB coverage applies only when the vehicle in question is a "motor bus." N.J.S.A. 17:28-1.5 provides in pertinent part that: "`Motor bus' means an omnibus, as defined in [N.J.S.A. 39:1-1], except that `motor bus' shall not include [certain exceptions]."[2] *988 N.J.S.A. 39:1-1 in turn defines an "omnibus" as:
all motor vehicles used for the transportation of passengers for hire, except commuter vans and vehicles used in ridesharing arrangements and school buses, if the same are not otherwise used in the transportation of passengers for hire. [emphasis added].
It follows from this definition that in order to be classified as an omnibus, a vehicle must be used to transport "passengers for hire."
The parties concede that the Senior Care minibus does not fall within any of the exceptions to "motor bus" enumerated in N.J.S.A. 17:28-1.5. The parties also concede that the Senior Care minibus is not a commuter van or a vehicle used in a ridesharing arrangement. Therefore, the requirement that the minibus carry MEB coverage depends on whether or not it was used for the transportation of passengers for hire.
We must analyze a statute by construing its words and phrases within the statute's context. These words and phrases must be given their generally accepted meaning "unless inconsistent with the Legislature's manifest intent or unless another meaning is expressly indicated." Stevenson v. Keene Corp., 254 N.J.Super. 310, 317, 603 A.2d 521 (App.Div.1992), aff'd 131 N.J. 393, 620 A.2d 1047 (1993). When the Legislature has specifically defined a term, that definition governs. Ibid. An examination of the overall policy and purpose of a statute, provides additional assistance in deriving its correct interpretation. Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 213, 584 A.2d 784 (1991).
Here, the term "transportation of passengers for hire" is not defined in Title 17. Therefore, the term must be given its "generally accepted meaning." Stevenson v. Keene Corp., supra, 254 N.J.Super. at 317, 603 A.2d 521. Black's Law Dictionary defines "for hire" to mean: "To transport passengers or property for a fare, charge, or rate to be paid by such passengers or persons for whom such property is transported, to owner or operator. Michigan Consol. Gas Co. v. Sohio Petroleum Co., 321 Mich. 102, 32 N.W.2d 353, 356." Black's Law Dictionary, 651 (6th ed.1990).
The statute's legislative history provides further insight. The statement of the Senate Labor, Industry and Professions Committee reads as follows:

Assembly, No. 3325-L.1991, c. 154
This bill, as amended, requires that owners or operators of private, commercial motor buses which operate regular route, casino, charter or special bus service must provide $250,000 medical expense benefits coverage on a no-fault basis for any passenger injured as a result of an accident while occupying, entering into or alighting from a motor bus.
From the language of the statute and its legislative history it is clear that the Legislature intended to mandate MEB coverage primarily for the protection of passengers of commercial buses which operate regular routes as well as charter buses. In other words, situations where the user of a motor bus pays a fee or fare for the transportation *989 itself, rather than situations where the user pays a fee for a different kind of service which includes transportation thereto. The latter is the use to which the minibus is put.
We also note that the exception to the definition of "motor bus" in N.J.S.A. 17:28-1.5 excludes hotel-to-airport buses, as well as school, camps, and day care, buses. These arrangements are akin to the Senior Care arrangement where clients do not pay a transportation fare. Rather, they pay a weekly fee for multiple services including transportation.
We therefore conclude that the Senior Care minibus was not being used at the time of the accident for the purpose of transporting passengers for hire. Although we reach the same conclusion as the judge, we disagree with his determination that the minibus was not a for-hire vehicle because it was not available to the general public. That is not a significant distinction because the Legislature intended that charter and casino buses, which do not provide transportation to the general public, come within the mandate to provide MEB coverage to its passengers.
Accordingly, summary judgment in favor of Maryland is affirmed.
NOTES
[1] Nebinger and Wells are incompetent, therefore the lawsuits were filed on their behalf by their respective Guardians ad Litem.
[2] The exceptions are:

a. Vehicles engaged in the transportation of passengers for hire in the manner and form commonly called taxicab service unless such service becomes or is held out to be regular service between stated termini;
b. Hotel buses used exclusively for the transportation of hotel patrons to or from local railroad or other common carrier stations including local airports;
c. Buses operated for the transportation of enrolled children and adults only when serving as chaperons to or from a school, school connected activity, day camp, summer day camp, nursery school, child care center, pre-school center or other similar places of education, including "School Vehicle Type I" and "School Vehicle Type II" as defined in R.S. 39:1-1;
d. Any autobus with a carrying capacity of not more than 13 passengers operated under municipal consent upon a route established wholly within the limits of a single municipality or with a carrying capacity of not more than 20 passengers operated under municipal consent upon a route established wholly within the limits of not more than four contiguous municipalities within any county of the fifth or sixth class, which route in either case does not in whole or in part parallel upon the same street the line of any street railway or traction railway or any other autobus route;
e. Autocabs, limousines or livery services as defined in R.S. 48:16-13 unless such service becomes or is held out to be regular service between such termini;
f. Any vehicle used in a "ridesharing" arrangement, as defined by the "New Jersey Ridesharing Act of 1981," P.L.1981, c. 413 (C. 27:26-1 et al.);
g. Any motor bus owned and operated by the New Jersey Transit Corporation; or
h. Any special paratransit vehicle as defined in R.S. 48:4-1.