859 A.2d 1232 (2004)
372 N.J. Super. 544
In the Matter of a Petition for a Declaratory Ruling Regarding the CITY OF PLAINFIELD'S PARK-MADISON SITE.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2004.
Decided October 15, 2004.
*1234 Thomas A. Borden, Newark, argued the cause for appellants Citizens and Friends for Equitable Stewardship and New Jersey Chapter-Sierra Club (Rutgers Environmental Law Clinic, attorneys; Mr. Borden, on the brief).
Rachel Horowitz, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Ms. Horowitz, on the brief).
Jeffrey J. Miller, Teaneck, argued the cause for respondent Union County Improvement Authority (DeCotiis, Fitzpatrick, Cole & Wisler, attorneys; Mr. Miller, on the brief).
Joseph J. Maraziti, Jr., Short Hills, argued the cause for respondent City of Plainfield (Maraziti, Falcon & Healey, attorneys; Brent T. Carney, on the brief).
Before Judges PETRELLA, LINTNER and YANNOTTI.
The opinion of the court was delivered by
LINTNER, J.A.D.
Citizens and Friends for Equitable Stewardship, a Plainfield citizens' group, and the Sierra Club-New Jersey Chapter (CAFES-SCNJ) appeal from a June 17, 2003, decision of the Commissioner of the Department of Environmental Protection (DEP) declining to hear CAFES-SCNJ's petition for a declaratory judgment and request for a stay of proposed development of a four-acre tract in Plainfield known as the Park-Madison site. This is the second time this case comes before us. We affirm the Commissioner's decision, albeit for different reasons. See Isko v. Planning Bd. of Livingston Township, 51 N.J. 162, 175, 238 A.2d 457 (1968).
We combine the procedural history and relevant facts. The underlying facts are set forth at length in our opinion in In Re Amendment to Recreation & Open Space Inventory of the City of Plainfield, 353 N.J.Super. 310, 314-321, 802 A.2d 581 (App.Div.2002), decided July 18, 2002, which we incorporate by reference in this opinion. Holding essentially that there was not a bona fide inaccuracy in Plainfield's ROSI, we reversed the Commissioner's decision removing Green Acres protection from the Park-Madison site.
Petitions for Certification were filed on August 7, 2002, by the DEP, the Union County Improvement Authority (UCIA or developer), and the City of Plainfield (Plainfield). While these Petitions were pending, the Legislature amended N.J.S.A. 13:8A-47 effective December 12, 2002 (the Amendment). The Amendment provided that the proscription against disposing or diverting lands used for recreation and conservation purposes without Commissioner and State House Commission approval does not apply to
lands included in a redevelopment plan adopted pursuant to section 7 of P.L. 1992, c. 79 (C.40A:12A-7) that are being, or which have been, used for recreation and conservation purposes pending implementation of the redevelopment plan and the eventual use of those lands for *1235 other purposes in accordance with the redevelopment plan. Such lands, because of their use for recreation and conservation purposes, shall not be deemed to be part of any inventory of lands prepared for the purposes of administering or enforcing this section. The exception provided by this subparagraph shall apply only to lands not acquired or developed for recreation or conservation purposes with financial assistance in whole or in part provided by the State, the federal Land and Water Conservation Fund, 16 U.S.C. s.460l-4 et al., the federal "Urban Park and Recreation Recovery Act of 1978," 16 U.S.C. s.2501 et seq., or a county or local open space trust fund created pursuant to P.L.1997, c. 24 (C.40:12-15.1 et seq.). [N.J.S.A. 13:8A-47b(2)(a).]
The exception only applies to redevelopment plans adopted prior to July 18, 2002. N.J.S.A. 13:8A-47b(2)(c).
While the bill was pending the Governor's signature, the DEP was afforded an extension of time in which to file its Reply Brief in support of its Petition for Certification. Four days after the Amendment became effective, the DEP moved to dismiss its Petition for Certification, asserting that its enactment rendered review moot. UCIA and Plainfield followed suit with their motions to withdraw their Petitions for Certification. The motions were granted by orders of the Supreme Court on January 15, 2003. Those orders did not reflect any finding by the Court that the matter before it was rendered moot by the enactment of the Amendment.
On April 3, 2003, the UCIA formally acquired the Park Madison site and issued $28,000,000 of Lease Revenue Bonds to be publicly marketed. On May 8, 2003, groundbreaking ceremonies were held at the site, after which the developer's activities commenced.
On June 6, 2003, CAFES-SCNJ filed its Petition for a Declaratory Ruling, N.J.S.A. 52:14B-8, with the State House Commission and the Commissioner seeking a ruling that the Amendment did not exempt the Park-Madison site and requesting a stay on further development pending resolution of its petition. On June 17, 2003, the Commissioner responded, concluding:
Given the New Jersey Supreme Court's action, I find that there is no issue for review and therefore I am determining not to further exercise my discretion under N.J.S.A. 52:14B-8 to issue a declaratory ruling. I similarly decline to address your clients' motion for a stay of construction at the Park-Madison site.
CAFES-SCNJ filed its appeal on June 20 along with an emergent application for a stay pending appeal. We denied the emergent application as not appropriate.
CAFES-SCNJ contends that the Commissioner erroneously refused to issue a declaratory ruling concerning the applicability of the Amendment to the site. They argue that the Park-Madison site does not come under the exception carved out by the Legislature because Plainfield accepted and received Urban Enterprise Zone (UEZ) funds from the State, which were used to improve recreational activities at the site. CAFES-SCNJ asserts that because the Park-Madison site is not exempt under the Amendment, its development amounts to a diversion from Green Acres protection and therefore Plainfield is required to provide a replacement site or compensation for the loss of the park facility.
The government entities and the developer counter, claiming that the Supreme Court's grant of its motion to dismiss the DEP's Petition for Certification as moot was determinative of the issue, and therefore *1236 the Commissioner's decision was correct. They also maintain that CAFES-SCNJ's failure to oppose the DEP's motion bars it from litigating the issue under the entire controversy doctrine, res judicata, and equitable estoppel. Finally, they argue that, notwithstanding the procedural bar, the plain language of the Amendment exempts the Park-Madison site from diversion and the expressed legislative intent was to permit redevelopment of the site and not punish the city for temporarily using the site for park or recreational purposes.
At oral argument on appeal, we learned that the development of the Park-Madison site, which includes the construction of a four-story office building and underground parking, is virtually completed. Because construction is complete, CAFES-SCNJ concedes that it does not now seek a decision affecting the Park-Madison site.
CAFES-SCNJ advances two reasons in support of its contention that we should resolve the issue notwithstanding the completion of development at the Park-Madison site. First, it argues that we should settle the intent and meaning of the Amendment as it may impact upon future similar cases. Alternatively, it asserts that development of the site represents a diversion from Green Acres protection, thus requiring Plainfield to provide a replacement site or compensation. See N.J.A.C. 7:36-21.3.
We find unpersuasive the argument that we should resolve the issue to settle the meaning of the Amendment because it may impact future similar cases. Issues that have been rendered moot by subsequent developments render legal issues abstract and outside the proper realm of courts. Zirger v. General Accident Ins. Co., 144 N.J. 327, 330, 676 A.2d. 1065 (1996); Oxfeld v. New Jersey State Bd. of Educ., 68 N.J. 301, 303-04, 344 A.2d 769 (1975); Sente v. Mayor & Mun. Council of Clifton, 66 N.J. 204, 205, 330 A.2d 321 (1974). The issue thus presented is purely hypothetical at this point. "We will not render advisory opinions or function in the abstract; nor will we decide a case based upon facts which are undeveloped or uncertain." Zamboni v. Stamler, 199 N.J.Super. 378, 383, 489 A.2d 1169 (App. Div.1985); see also New Jersey Ass'n for Retarded Citizens v. New Jersey Dep't of Human Serv., 89 N.J. 234, 241, 445 A.2d 704 (1982); Crescent Pk. Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107, 275 A.2d 433, (1971); New Jersey Turnpike Auth. v. Parsons, 3 N.J. 235, 240, 69 A.2d 875, (1949); Jackson v. Dep't of Corrections, 335 N.J.Super. 227, 230-31, 762 A.2d 255 (App.Div.2000).
We, however, agree with CAFES-SCNJ's alternative argument that the issue is not moot because Plainfield would be required to provide a replacement parcel or compensation, pursuant to N.J.A.C. 7:36-21.3, depending upon the applicability of the Amendment to the Park-Madison site.
Before addressing the applicability of the Amendment and whether our resolution of the issue is necessary, we address the developer's and the public entities' contention that CAFES-SCNJ is procedurally barred. As we have previously noted, the Supreme Court orders dismissing and permitting withdrawal of the Petitions for Certification did not express any determination by the Court that the matter was rendered moot by the Amendment. More importantly, our prior decision, which was pending possible review by the Court, was rendered before the adoption of the Amendment and therefore we did not, nor could we have, addressed its applicability to the Park-Madison site. Generally, an appellate tribunal *1237 will not consider questions not previously presented unless the issue raised concerns matters of great public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). The record does not indicate that the Supreme Court actually considered the applicability of the Amendment at the time it granted the motions nor does the Court indicate that it would have considered the applicability of the Amendment had the petitions been granted. Because there was no determination by the Supreme Court concerning the applicability of the Amendment to the Park-Madison site, it was error for the Commissioner to consider the issue moot.
Equally unavailing is the contention that CAFES-SCNJ's failure to respond to the motions to dismiss and withdraw the pending Petitions precludes it from questioning the applicability of the Amendment in a subsequent proceeding. Simply put, CAFES-SCNJ's silence, when faced with a request to dismiss and withdraw Petitions for Certification seeking to review a prior decision favorable to CAFES-SCNJ's, cannot be viewed as acquiescence on its part to an issue not previously argued or decided. The contentions that CAFES-SCNJ was precluded by the doctrines of res judicata, equitable estoppel, or entire controversy from seeking a determination by the Commissioner of the applicability of the Amendment are without merit and do not warrant further discussion. R. 2:11-3(e)(1)(E).
All parties assert that the issue of the Amendment's applicability to the Park-Madison site is a question of law. We agree. Because resolution of the applicability of the Amendment does not involve administrative expertise or discretion, we are satisfied that it is necessary and appropriate for us to exercise original jurisdiction to complete the determination of the issue rather than remand to the Commissioner. R. 2:10-5.
We briefly restate general principles applicable here. The plain language of a statute is paramount to determining its proper meaning and application unless that language is inconsistent with manifest legislative intent or another meaning expressly indicated. Innes v. Innes, 117 N.J. 496, 505-12, 569 A.2d 770 (1990); Nebinger v. Maryland Casualty Co., 312 N.J.Super. 400, 406, 711 A.2d 985 (App. Div.1998). The plain wording of the Amendment provided that "lands included in a redevelopment plan ... which have been used for recreation and conservation purposes pending implementation of the redevelopment plan ... shall not be deemed to be part of any inventory of lands" by virtue of their "use for recreation and conservation purposes." N.J.S.A. 13:8A-47b(2)(a). Thus, if the exception applies and exempts the Park-Madison site, Plainfield would not be required to provide a replacement parcel or compensation pursuant to N.J.A.C. 7:36-21.3 because there has not been a diversion or disposal of land held in inventory for park land.
CAFES-SCNJ asserts, however, that the Amendment does not except the Park-Madison site because Plainfield received financial assistance from the State, which it used for recreational purposes at the site. Although the legislative history and sponsor statements do not bind our interpretation of the statute, they inform our decision by providing important insight into the Legislature's intent and the statute's "overall policy and purpose." Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 213, 584 A.2d 784 (1991); Nebinger, supra, 312 N.J.Super. at 406, 711 A.2d 985; see, e.g., Innes, supra, 117 N.J. at 505-12, 569 A.2d 770.
*1238 The Assembly Housing and Local Government Committee in its statement recommending the Amendment indicated that the Amendment was crafted to "overrule[]" our July 18 decision.
In a recent court case, the Appellate Division interpreting the two laws and associated regulations in the context of the facts of that case decided that the lands in question that were being used for recreation and conservation purposes pending implementation of a redevelopment plan became subject to the Green Acres diversion requirements and process because of that use.
Until the court decision, municipalities adopting redevelopment plans heretofore may not have realized the full implications of temporarily using some of the lands included in those plans for park purposes. This bill, in effect, overrules in part the court decision as it may be applied to those municipalities, and reasserts the primacy of the legislative objective of promoting urban revitalization in the manner determined by a municipality pursuant to its redevelopment plan. However, the bill applies only to redevelopment plans adopted prior to July 18, 2002, the date of the court opinion.
[The Assembly Housing and Local Government Committee, Statement to S. 2714 (bill introduced September 12, 2002).]
To this end, the Assembly Housing and Local Government Committee and Assembly Environmental and Solid Waste Committee amended the bill
to clarify that the exception provided in the bill for lands which were temporarily used for recreation or conservation purposes does not apply to lands which were acquired or developed with State funds for recreation or conservation purposes.

[The Assembly Housing and Local Government Committee, Committee Amendments to S. 2714 (September 19, 2001); (emphasis added).]
Thus, the legislative intent was not to exempt lands that are acquired or developed with State funds for recreation and conservation purposes. From the time Plainfield acquired the Park-Madison site from the Housing Authority its intention was to redevelop the site for commercial purposes.
The UEZ funds received and used by Plainfield were not funds designated for developing recreation and conservation projects. The goal of the New Jersey UEZ Act, N.J.S.A. 52:27H-60 to-97, is to "provide a framework within which encouragement be given to private capital investment" for economic revitalization of distressed and blighted urban areas. N.J.S.A. 52:27H-61. Although sought, obtained, and used by Plainfield for temporary enhancement of the park while it was trying to find a willing developer, the UEZ funds were designed and intended to promote commercial redevelopment at the Park-Madison site. More importantly, Plainfield did not acquire the site for recreational purposes but has always pursued commercial development.
The Park-Madison site does meet the exception carved out by the Amendment, is exempt from Green Acres, and, therefore, cannot be considered as having been diverted from lands held for recreational purposes. Accordingly, the residents of Plainfield are not entitled to a replacement parcel or compensation.
Affirmed.