**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1577-19

IN THE MATTER OF
INSPIRA MEDICAL CENTER
- VINELAND'S SFY 2020
SUPPLEMENTAL GRADUATE
MEDICAL EDUCATION
ALLOCATION APPEAL

_____

Argued April 27, 2021 – Decided June 9, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from the New Jersey Department of Health.

Paul L. Croce argued the cause for appellant Inspira Medical Center (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Paul L. Croce, of counsel and on the briefs).

Jacqueline R. D'Alessandro, Deputy Attorney General, argued the cause for respondent New Jersey Department of Health (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, on the brief).

PER CURIAM

This appeal concerns a dispute over the calculation and allocation of a subsidy given by the State to qualifying hospitals. Inspira Medical Center - Vineland (Inspira) appeals from a November 4, 2019 final agency decision by the Department of Health (Department), which denied Inspira's appeal of the Graduate Medical Education Supplemental (GME-S) subsidy for fiscal year 2020. Inspira contends that it would have qualified for part of that subsidy had the Department accepted and used a revised cost report from Inspira. Inspira also argues that the Department failed to engage with it to ensure that accurate information was used and contends, as well, that its administrative due process rights were violated.

The Department rejected Inspira's administrative appeal, reasoning that it was required to use the hospital cost reports submitted and audited by January 31, 2019, to calculate the GME-S subsidy for fiscal year 2020. Inspira did not inform the Department that its cost report was inaccurate until April 2019. We hold that the Department's interpretation of its responsibilities for calculating and allocating the GME-S subsidy was reasonable and consistent with the 2020 Appropriations Act, L. 2019, c. 150. Discerning nothing arbitrary, capricious, or unreasonable in the Department's decision, we affirm.

I.

The New Jersey Legislature supports eligible hospitals with subsidies and annually appropriates monies in the State Fiscal Year (SFY) Appropriations Act. N.J.S.A. 26:2H-18.57(a).  The subsidies available to hospitals include, among others, the Charity Care subsidy, the Graduate Medical Education (GME) subsidy, and the GME-S subsidy.

The Charity Care subsidy provides money for indigent patient care. N.J.S.A. 26:2H-18.60(b).  The GME subsidy provides financial support to offset some of the costs that hospitals incur in providing graduate medical education. N.J.A.C. 10:52-8.6.  In August 2018, the Legislature created GME-S as an additional subsidy to support teaching hospitals that have a large percentage of Medicaid patients.  L. 2018, c. 116; N.J.S.A. 26:2H-18.57(a).[1]

An acute care hospital is eligible for a GME-S subsidy if it has a Relative Medicaid Percentage (RMP) that is in the top third of all acute care hospitals with a residency program.  N.J.S.A. 26:2H-18.57(a).  The RMP measures the percentage of patients with government-subsidized healthcare.  The RMP ratio is calculated using audited acute care hospital (ACH) cost reports.  ACH cost reports are submitted to the Department on an annual basis.  N.J.A.C. 8:31B-

_____

[1] GME-S is also known as "Safety Net GME."  N.J.S.A. 26:2H-18.57(a).

3.3(a); N.J.A.C. 8:31B-4.6.  The Department uses the cost reports for a variety of calculations, including determining the hospital's rate of reimbursement for services and eligibility for subsidies.  N.J.A.C. 8:31B-4.1.

This appeal involves the GME-S subsidy for SFY 2020.  In the 2020 Appropriations Act, the Legislature appropriated $24 million for the GME-S subsidy.  L. 2019, c. 150, at 82, ll. 11-13.  The Appropriations Act directed the Department to identify the top fourteen acute care teaching hospitals in the State by using data in hospitals' cost reports.  N.J.S.A. 26:2H-18.57(a); L. 2019, c. 150, at 81, l. 56, to 82, l. 11.  Specifically, the Appropriations Act provides:

> Supplemental Graduate Medical Education Subsidy (GME-S) . . . shall be available to hospitals that meet the following eligibility criteria:  (a) an eligible hospital has a Relative Medicaid Percentage (RMP) that is among the top fourteen acute care hospitals with a residency program; (b) the RMP is a ratio calculated using the 2017 Audited Acute Care Hospital (ACH) Cost Reports; (c) the RMP numerator equals a hospital's gross revenue from patient care for Medicaid and Medicaid HMO payers as reported on Forms E5 and E6, Line 1, Column D & Column H; (d) the RMP denominator equals a hospital's gross revenue from patient care as reported on Form E4, Line 1, Column E; (e) for instances where hospitals that have a single Medicaid identification number submit a separate ACH Cost Report for each individually licensed hospital, the ACH Cost Report data for those hospitals shall be consolidated to the single Medicaid identification number; (f) the GME-S Subsidy shall be calculated using the same methodology as the GME Subsidy is

4

calculated in this act, except the total amount of the GME-S Subsidy payments shall not exceed $24,000,000.

[Ibid.]

In June 2018, Inspira submitted its 2017 ACH cost report to the Department. Nine months later, in March 2019, Inspira discovered that it had underreported its Medicaid revenue by approximately $23 million in its 2017 ACH cost report. In April 2019, Inspira sent an email to the Department notifying it of the error and asking for instructions on how to resubmit its 2017 ACH cost report. An employee of the Department responded in an email, stating: "As you [k]now, [the] 2017 audit was closed[,] and the amounts were used for different calculations." later that month, Inspira sent two additional emails to the Department inquiring about submitting a revised 2017 ACH cost report. The Department did not respond to either email.

On July 3, 2019, the Department issued the SFY 2020 GME-S subsidy allocation announcement. Inspira did not receive a GME-S subsidy. The allocated $24 million was distributed to fourteen other hospitals.

On July 17, 2019, Inspira filed a notice of intent to appeal the SFY 2020 GME-S subsidy allocation. Shortly thereafter, on July 24, 2019, Inspira submitted a corrected 2017 ACH cost report. Approximately one week later,

5

Inspira filed its formal appeal, contending that the Department should have permitted Inspira to submit corrected cost data. Specifically, Inspira argued that had the Department accepted its revised 2017 ACH cost report, Inspira would have been eligible for a GME-S subsidy of just over $1.8 million.

In September 2019, the Department conducted a review of Inspira's appeal. On November 4, 2019, the Department denied Inspira's appeal in a final agency determination. In its decision, the Department explained that the Legislature had instructed it to allocate the GME-S subsidy using the 2017 ACH cost reports. The Department pointed out that the Legislature in connection with how the Department was to allocate the Charity Care subsidy had defined the term "2017 audited [ACH] Cost Report" as the cost report submitted "according to the [Department's] due date of June 30, 2018, as submitted by December 31, 2018 by each acute care hospital and audited by January 31, 2019." L. 2019, c. 150, at 79, ll. 23-27.

The Department also determined that Inspira was not deprived of its administrative due process rights. The Department pointed out that it had not closed the cost database for the 2017 audited ACH cost reports. It explained that it had allowed Inspira to amend its cost report for purposes other than the GME-S subsidy. In determining the GME-S subsidy, however, the Department

had to use the 2017 ACH cost reports that were audited as of January 31, 2019. Consequently, the Department reasoned that it had complied with the Appropriations Act and Inspira was not deprived of any administrative due process rights. Inspira now appeals from the Department's final agency determination.

II.

In its appeal to us, Inspira makes three related arguments. First, it contends that the Department acted arbitrarily, capriciously, and unreasonably in using Inspira's cost report as audited by January 31, 2019. Second, Inspira argues that the Department was unreasonable in refusing to engage with Inspira to allow it to correct its cost report. Finally, Inspira contends that the Department deprived it of its administrative due process rights by not sending notice of the Department's intent to close the aggregate current cost database for 2017. We are not persuaded by any of these arguments, and we affirm the Department's final decision issued on November 4, 2019.

A.

An appellate court's review of an administrative agency's final decision is limited. Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. 483, 515 (2018). An agency's decision will not be reversed unless "(1) it

7

was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record."  Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007) (citing In re Taylor, 158 N.J. 644, 656 (1999)).  Moreover, courts generally "afford substantial deference to an agency's interpretation of a statute that it is charged with enforcing."  Ibid. (citing R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175 (1999)).  An appellate court, however, is not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue."  Ibid. (quoting In re Taylor, 158 N.J. at 658).

"'[A] strong presumption of reasonableness' attends an agency's exercise of its statutorily delegated duties, which 'is even stronger when the agency has delegated discretion to determine the technical and special procedures to accomplish its task.'"  Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 103 (App. Div. 2014) (alteration in original) (quoting In re Holy Name Hosp., 301 N.J. Super. 282, 295 (App. Div. 1997)).  "As long as the agency decision is contemplated under its enabling legislation, the action must

be accorded a presumption of validity and regularity." A.M.S. ex rel. A.D.S. v. Bd. of Educ., 409 N.J. Super. 149, 159 (App. Div. 2009) (citation omitted).

B.

Inspira contends that the Legislature did not define "2017 audited [ACH] Cost Report" as it related to the GME-S subsidy. Accordingly, Inspira argues that the Department should have allowed it to revise its cost report and recalculate the GME-S subsidy.

For SFY 2020, the Legislature provided the Department with instructions for calculating various subsidies. L. 2019, c. 150. The Legislature first discussed the Charity Care subsidy. In that section, the Legislature instructed the Department to allocate Charity Care subsidy funds using the "2017 audited [ACH] Cost Report." Id. at 79, ll. 15-27. The Legislature then defined "2017 audited [ACH] Cost Report" as the cost report submitted "according to the [Department's] due date of June 30, 2018, as submitted by December 31, 2018 by each acute care hospital and audited by January 31, 2019." Ibid. Thereafter, in the same act, the Legislature directed the Department to use the "2017 [a]udited Acute Care Hospital (ACH) Cost Reports" in calculating and allocating the GME-S subsidy. Id. at 82, ll. 1-4.

9

The Department reasoned that because eligibility for both the Charity Care and GME-S subsidies were set forth in the 2020 Appropriations Act, it was consistent with well-established statutory construction to apply the definition used by the Legislature for "2017 audited [ACH] Cost Reports" to the GME-S subsidy. We agree.

"The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). "To determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning." State v. J.V., 242 N.J. 432, 442 (2020) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

In the SFY 2020 Appropriations Act, the Legislature used the term "2017 audited [ACH] Cost Reports" several times. It is completely reasonable to interpret the Appropriations Act to use that term consistently. Accordingly, when the Legislature first defined "2017 audited [ACH] Cost Reports" in the Charity Care subsidy section, L. 2019, c. 150, at 79, ll. 23-27, it is consistent with the plain language of the statute to thereafter apply the same definition to "2017 audited [ACH] Cost Report" in the GME-S subsidy section. Com. Bancorp, Inc. v. InterArch, Inc., 417 N.J. Super. 329, 336–37 (App. Div. 2010)

(alteration in original) (quoting Simpkins v. Saiani, 356 N.J. Super. 26, 32-33 (App. Div. 2002)) (explaining where Legislature "clearly and explicitly defined a term," courts assume it was "with the intent that [the] definition be applied to that term throughout the statute"); Nebinger v. Md. Cas. Co., 312 N.J. Super. 400, 406 (App. Div. 1998) (noting "[w]hen the Legislature has specifically defined a term, that definition governs").

Indeed, under Inspira's interpretation, the statute would effectively have no due date for the report that was going to be used to calculate the SFY 2020 GME-S subsidy. Accordingly, hospitals could submit revised cost reports at any time and the Department would have to recalculate GME-S subsidies, then revoke and revise the allocations made to eligible hospitals. That interpretation does not make sense. The Department needs timely cost reports to properly calculate healthcare subsidies. 37 N.J.R. 2165(a) (June 20, 2005) (noting hospitals' failure "to submit cost reports on a timely basis creates problems for auditing and the proper calculation of [healthcare] subsidies"); see also N.J.A.C. 8:31B-3.16(c)(1) (outlining civil monetary penalty for hospital's failure to promptly submit ACH cost report).

C.

Inspira also argues that the Department ignored its cost-reporting regulations because it did not engage with and allow Inspira to correct its cost report. The Department has promulgated cost-reporting regulations under its authority granted in the Health Care Facilities Planning Act (HC Act), N.J.S.A. 26:2H-1 to -26. As already noted, hospitals submit cost reports to the Department and the Department uses those reports for various purposes. N.J.A.C. 8:31B-4.1. The cost-reporting rules establish standardized procedures so that hospitals submit reports to the Department using the same accounting principles. Ibid. The eligibility and allocation criteria for the GME-S subsidy are set forth in N.J.S.A. 26:2H-18.57(a). Accordingly, the rules governing cost reporting are separate and distinct from the rules governing eligibility for hospital subsidies.

Inspira has not identified any regulations with which the Department did not comply in calculating and allocating the GME-S subsidy for SFY 2020. Nor has Inspira identified any instances when the Department did not "turn square corners" in dealing with Inspira. W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 561 (1989). It is perfectly reasonable and consistent with its

12

statutory authority for the Department to have a defined timeline for hospitals to submit audited ACH cost reports.

D.

Finally, Inspira argues that the Department violated its administrative due process rights by failing to issue a notice of intent to close the aggregate cost database for 2017. The Department contends that in July 2019 it had not closed the database for 2017 and, therefore, it had not issued a notice.

Hospitals are required to submit annual ACH cost reports. N.J.A.C. 8:31B-3.3(a); N.J.A.C. 8:31B-4.6. The information contained in those reports are used by the Department to determine a hospital's cost basis, including rates of reimbursement. N.J.A.C. 10:52-6.1; N.J.A.C. 10:52-14.1 to -14.17 (describing rate setting methodology). The Department is required to issue a notice of intent before closing the aggregate cost database. N.J.A.C. 8:31B-3.16(a). In its final agency decision, the Department explained it had not closed the 2017 cost report database and it entered Inspira's revised cost report in the database.

The Department also explained, however, that by the time Inspira gave notice of the error in its 2017 audited ACH cost report in April 2019, that report was not open for revision in connection with the calculation and allocation of

13

the SFY 2020 GME-S subsidy. As already explained, the Legislature had directed the Department to use the 2017 audited ACH cost report as of January 31, 2019, to calculate the SFY 2020 GME-S subsidy.

In summary, we agree with the Department's interpretation of the 2020 Appropriations Act. We discern nothing arbitrary, capricious, or unreasonable in the Department's denial of Inspira's administrative appeal.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION