**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1491-24

J.R.,[1] on behalf of minor child, T.R.,

     Petitioner-Appellant,

v.

TOWNSHIP OF LONG HILL
BOARD OF EDUCATION,
MORRIS COUNTY, and
MICHAEL VITURELLO,
Principal,

     Respondents-Respondents.

_____

Submitted February 25, 2026 – Decided March 13, 2026

Before Judges Currier and Berdote Byrne.

On appeal from the New Jersey Commissioner of Education, Docket No. 78-4/22.

Oleske & Oleske, LLP, attorneys for appellant (Kristen D. Oleske, on the briefs).

---

[1] We use initials to protect the privacy interests of petitioner, the parent of a student enrolled in a New Jersey public school. See N.J.A.C. 6A:32-7.5(a); New Jersey Pupil Records Act, N.J.S.A. 18A:36-19; see also R. 1:38-3(a)(1).

The Busch Law Group, LLC, attorneys for respondents Long Hill Board of Education and Michael Viturello (Douglas M. Silvestro, on the brief).

Jennifer Davenport, Attorney General, attorney for respondent Commissioner of Education (Luke D. Hertzel-Lagonikos, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner J.R., on behalf of her minor child, T.R., appeals from the final agency decision of the Commissioner of Education (Commissioner), which upheld the determination of the Township of Long Hill Board of Education (the Board) finding T.R. committed an act of harassment, intimidation, or bullying (HIB) based on messages he sent to a Snapchat group containing demeaning comments about a fellow student. The Commissioner adopted the Administrative Law Judge's (ALJ) decision, which found the conduct satisfied the statutory definition of HIB pursuant to N.J.S.A. 18A:37-14.

We affirm the Commissioner's decision. The record contains substantial and credible evidence supporting the determination T.R.'s conduct met the statutory criteria for HIB.

I.

During the relevant period, T.R. was an eighth-grade student at Central Middle School (CMS) in the Long Hill Township School District (the District).

Michael Viturello had served as CMS principal for seven years. Melissa Backer, an assistant principal with the District since 2016, also served as the anti-bullying specialist for all three District schools, including CMS.

On November 10, 2021, a CMS student, Jane,[2] shared a Snapchat thread with Viturello after first reporting the matter to the school counselor. The thread included multiple CMS students, including T.R., making demeaning comments about another CMS student, Susan.

The comments, including those made by T.R., were vulgar and targeted Susan's appearance, weight, and sexual orientation. Viturello testified Jane was concerned about the comments that were being made about Susan. The comments made by T.R., with some minor exceptions, were generally directed at Susan, and he was aware the other participants were referring to her. Susan was not included in the November 9, 2021 Snapchat thread. The thread included CMS students as well as students from middle schools in nearby towns outside the District.

On the afternoon of November 10, 2021, Viturello contacted Susan's parents to make them aware. He spoke with Susan's mother, who already knew

---

[2] Fictitious names are used to identify the student reporter (Jane) and the victim (Susan).

A-1491-24

comments had been made about her daughter and was "very concerned[.]" She reported Susan was "self-conscious" and "anxious" about the comments.

Jane, who initially reported the incident to CMS staff, expressed fear of retaliation from classmates for informing school staff about the Snapchat thread. The day after making her report, Jane's parents signed her out of school, and she was homeschooled for the remainder of the school year. Viturello also spoke with Jane's mother, who indicated her intent to withdraw Jane from school as a result of the Snapchat incident.

On November 11, 2021, Viturello met with all CMS students, including T.R., who had made negative comments about Susan. During the meeting, T.R. admitted making the statements attributed to him, though he indicated he did not remember some of them.

The CMS Student Manual and Code of Conduct set forth in detail the behavior expected of CMS students. After an initial review, Viturello determined T.R. had, at a minimum, violated Section 2 (Behavior) by failing to: (a) "[m]ake appropriate decisions" and (b) "[c]ommunicate with others in a positive manner without teasing, name calling, or profanity." He also determined T.R. violated Section 3 (Respect) by failing to "[b]e respectful of different cultures, religions, ethnic and racial groups, gender identities and

4

sexual orientations, and physical and mental differences." As a result, Viturello imposed a six-day out-of-school suspension (OSS) on T.R. and other students involved in the Snapchat thread and initiated an HIB investigation.

The following day, T.R.'s mother notified school staff she was afraid to leave T.R. alone that morning as he had exhibited suicidal ideation in prior years. In response, Backer, the school counselor, and the school social worker made a home visit. They conducted a risk assessment and wellness visit of T.R., and he was cleared to return to school after the evaluation.

The HIB investigation was conducted by Viturello and Backer. Backer interviewed Susan the day after the incident was reported. Susan was aware of the Snapchat thread's substance and indicated a friend informed her of its contents. Backer testified Susan was "clearly very upset, she was crying, she expressed concern about going to the high school because these students had been previously making fun of her from our District and another district and she was embarrassed." Susan also stated "she avoids going to certain areas because she doesn't want to be around" those students. Susan received counseling from the District for the remainder of the year. Following the interview with Susan, Backer and Viturello interviewed witnesses and alleged offenders.

A-1491-24

The HIB investigation was completed on November 19, 2021. Backer concluded T.R.'s conduct constituted HIB under Board policy and state law. She completed an investigation report form in which she checked the boxes finding T.R.'s behavior met the listed HIB criteria. As Viturello had already imposed a six-day OSS on T.R. for the Code of Conduct violations, Backer recommended additional remedial measures, including meeting with a school counselor, a reflective writing assignment, and an in-home risk assessment supplemented by an additional parent meeting. Viturello approved the HIB investigation report without modification and forwarded it to the then-Superintendent of Schools, who approved the report without modification. Petitioner requested a Board hearing. At the Board hearing, the Board agreed with the recommendation of the Superintendent and upheld the determination T.R. had committed an act of HIB.

Petitioner then filed a petition of appeal with the Commissioner. The matter was transmitted to the Office of Administrative Law, where it was filed for determination as a contested case. After two days of hearings, the ALJ issued an initial decision on October 28, 2024, upholding the HIB finding and suspension, which the Commissioner adopted as the final agency decision on December 9, 2024. This appeal followed.

II.

"[A]n appellate court reviews agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). To determine whether an agency's action meets this standard, appellate courts consider the following:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

The framework for adjudicating HIB allegations is set forth in the Anti-Bullying Bill of Rights Act (the Act), N.J.S.A. 18A:37-13.1 to -32 and administrative code promulgated by the Commissioner of Education as

authorized by the State Board of Education. The Legislature promulgated these laws "to strengthen the standards and procedures for preventing, reporting, investigating, and responding to incidents of harassment, intimidation, and bullying of students that occur in school and off school premises[.]" N.J.S.A. 18A:37-13.1(f).

As defined by the Act:

> "Harassment, intimidation or bullying" means any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, or off school grounds as provided for in section 16 of P.L.2010, c. 122 (C.18A:37-15.3), that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:
>
> a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;
>
> b. has the effect of insulting or demeaning any student or group of students; or

c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

[N.J.S.A. 18A:37-14.]

The Board adopted a policy that largely models the language of N.J.S.A. 18A:37-14. Petitioner challenges this policy as an impermissible alteration of the statute. Specifically, after the semicolon following subsection (a), which separates it from subsection (b), the Board's policy includes the word "or." Petitioner argues this changes the meaning of the statute by making subsection (a) a "disjunctive" element rather than a "conjunctive" element. Put differently, petitioner contends this change erroneously renders subsection (a) only one of the three possible elements necessary for a finding of HIB, rather than a required element. Accordingly, petitioner maintains the Board's HIB determination, which relied on the policy, and the subsequent upholding of that determination by the Commissioner were arbitrary, capricious, and unreasonable.

When interpreting statutory language, we "aim[] to effectuate the Legislature's intent." W.S. v. Hildreth, 252 N.J. 506, 518 (2023). The "'best indicator' of legislative intent 'is the statutory language.'" Ibid. (quoting State v. Lane, 251 N.J. 84, 94 (2022)). We "ascribe to the statutory words their ordinary meaning and significance and read them in context with related

provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation omitted). "Punctuation is part of an act and may be considered in its interpretation." Commerce Bancorp, Inc. v. InterArch, Inc., 417 N.J. Super. 329, 336 (App. Div. 2010) (quoting Moore v. Magor Car Corp., 27 N.J. 82, 87 (1958)). "If the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013). "'[O]nly when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or is at odds with the general statutory scheme,' will we turn to extrinsic tools to determine legislative intent." In re Proposed Constr. of Compressor Station (CS327), 258 N.J. 312, 325 (2024) (alteration in original) (quoting Shelton, 214 N.J. at 429). Moreover, when a statute is silent as to a particular issue, we must interpret that issue in light of the Legislature's intent. See Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (citing Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 171 (2006)).

Pursuant to N.J.S.A. 18A:37-14, a finding of HIB does not require subsection (a) to be satisfied in every instance. The statutory language and the placement of the word "or" between subsections (b) and (c) indicate that the three subsections—(a), (b), and (c)—are to be read disjunctively. See State v.

Smith, 262 N.J. Super. 487, 506 (App. Div. 1993) ("When items in a list are joined by a comma or semicolon, with an 'or' preceding the last item, the items are disjunctive."); In re Est. of Fisher, 443 N.J. Super. 180, 192 (App. Div. 2015) (finding "the three clauses in N.J.S.A. 3B:5-14.1(b)(1) are distinct and separate from each other" because "the word 'or' in a statute is to be considered a disjunctive particle indicating an alternative." (quoting State v. Kress, 105 N.J. Super. 514, 520 (Law Div. 1969))).  This is supported by the Commissioner's decision in Wehbeh v. Bd. of Educ. of the Twp. of Verona, Essex Cnty., Commissioner Decision No. 51-20 (Feb. 4, 2020), nj.gov/education/legal/commissioner/2020/51-20.pdf, which held:

> The Initial Decision incorrectly views subsection (a), that a reasonable person should know the act will have a harmful effect, as the third requirement, with an additional fourth requirement being a choice between subsections (b) and (c).  As a matter of standard statutory construction, the term "or" between subsections (b) and (c) also applies to subsection (a), such that a demonstration of any of these three criteria can support a finding of HIB.

Accordingly, satisfying any one of the three subsections is sufficient to establish a finding of HIB.

Notwithstanding, the Commissioner's finding T.R.'s conduct satisfies N.J.S.A. 18A:37-14(a) is supported by the record.  Petitioner argues the school

11

administration's own factual findings required dismissal of the HIB charge as a matter of law. What petitioner is referring to is a box Melissa Backer checked on the HIB investigation form, which read, "Intentional, but not designed to harass, intimidate or bully[:] The student knowingly engaged in harassing, intimidating, or bullying behavior but was not aware of the potential negative impact on the target." However, this speaks to T.R.'s subjective intent, which is not included in the statutory language. Indeed, the governing standard is what "a reasonable person should know[] under the circumstances," not what T.R. knew. N.J.S.A. 18A:37-14(a). Furthermore, we agree with the ALJ's well-reasoned analysis as to why a reasonable eighth grade student should know his messages would have the effect of emotionally harming Susan:

> [A] reasonable 8th grade student would be aware of the ability to screenshot texts or pictures and, thus, should know, under the circumstances, that the posted insults may not remain confined to the Snapchat participants and might be revealed to Susan even if the Snapchat posts later disappeared. Given the ease under which electronic communications may be copied or shown to other persons, it is certainly reasonable to expect a thirteen-year-old student to understand that someone could disseminate his comments regardless of the forum in which they were posted. In this regard, Viturello testified that although it was Snapchat, there were over two dozen students on it, and "knowing middle school students, it's very reasonable to understand that someone's going to share a conversation that was more than one comment." He

12

further noted that participants can screenshot . . . the information posted on Snapchat "so the information travels." Backer explained, "[m]aking fun of someone's appearance, [and] their sexuality, . . . a normal person would understand that . . . would be hurtful to that person and could cause emotional harm." Backer believed that a reasonable 8th grader would know under the circumstances that the conduct that T.R. admitted to would have the effect of physically or emotionally harming a student. She testified that "a reasonable 8th grade student would be aware that there are negative implications associated with that kind of language," and a "reasonable person would think that using that language with a group of [twenty-five] plus students would get back to that student." Simply put, the evidence fails to establish that the Board's conclusion that "a reasonable person should know, under the circumstances, [that T.R.'s comments] will have the effect of physically or emotionally harming" Susan was arbitrary, capricious, or unreasonable.

Because T.R.'s conduct falls within subsection (a), even if subsections (b) and (c) were resolved in petitioner's favor, the outcome would not change.

As to the main text of the statute, petitioner does not dispute T.R.'s comments are "reasonably perceived as being motivated either by any actual or perceived characteristic." See Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390, 396 (App. Div. 2021) ("An issue not briefed on appeal is deemed waived." (quoting Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 319 (App. Div. 2017))), aff'd as modified, 252 N.J. 265 (2022). The comments were clearly motivated by Susan's weight and sexual orientation. Instead, petitioner

argues T.R.'s actions did not substantially disrupt or interfere with the orderly operation of the school or the rights of other students, emphasizing Susan would not have been aware of the Snapchat comments had the school administrators not informed her.

Petitioner's argument is belied by the record, which reflects Susan was first made aware of the contents of the group chat when a friend told her. Even if petitioner had first been notified by school administrators, it is unreasonable to suggest inflammatory messages targeted at Susan in a group chat involving more than twenty-five middle school students would not have otherwise reached her. Moreover, it was another student, Jane, who took screenshots of the chat and brought them to school officials. The school administrators were statutorily required to investigate the allegations and to "inform the parents or guardians of all students involved in the alleged incident." N.J.S.A. 18A:37-15(b)(5). If we were to accept petitioner's argument, we would deem it permissible for school administrators to disregard their statutorily mandated duty.

The ALJ correctly found T.R.'s actions substantially disrupted or interfered with the orderly operation of the school or the rights of other students:

> Viturello testified that the victim, Susan, "was very anxious about the situation, was very impacted, [and] needed multiple counseling sessions[.]" She also expressed fear of going to the high school because the

incident involved not only Long Hill students but students in surrounding towns. Similarly, Backer testified that Susan "was visually very upset" about the comments said about her, she was crying and embarrassed, and she expressed concern about going to the high school. In addition, Viturello testified that the student who reported the information, Jane, was "very concerned about retribution" from the students involved in the conduct. Indeed, Jane's parents signed her out of the school after she reported the incident and Jane [remained] homeschooled for the remainder of the 2021–2022 school year. Viturello testified that he spoke with T.R.'s mother, who was concerned about T.R.'s mental health based on his involvement in the incident. This resulted in school staff conducting a risk assessment at T.R.'s home. Backer further testified that there was an interference with operation of the school as a whole and the incident "had a substantial interference with the school day." She described that "there were about [twenty-five] students that were involved on the Snapchat, so clearly it was spoken about within the middle school halls"; "[t]here were a lot of students that were interviewed"; and "there were a lot of staff members that were involved in the interview process and the HIB investigation[.]"

Finally, petitioner argues the HIB finding violated T.R.'s First Amendment right to freedom of speech. Petitioner concedes T.R.'s Snapchat comments would not constitute protected speech "if T.R. knew or should have known that the words would reach and harm the student who was the subject of the comments" but argues "T.R. was not aware that his words would cause harm." This argument likewise lacks merit. As discussed, a reasonable eighth

15

grade student should have known his comments would reach and harm Susan. Because T.R.'s conduct constitutes HIB pursuant to N.J.S.A. 18A:37-14, accepting petitioner's argument would require striking down the HIB statute as violative of the First Amendment. Petitioner does not raise such a challenge, and even if she had, it is unlikely it would succeed. Cf. Mahanoy Area Sch. Dist. v. B.L., 594 U.S. 180, 192-93 (2021).

The Commissioner's decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1491-24